THE TAMPA DOCK COMPANY, a Corporation, *Appellant*, vs. THE HANCHETT BOND COMPANY, a Corporation, and THE CITY OF TAMPA, a Municipal Corporation, *Appellees.*

141 So. 526.

Division A.

Opinion filed May 11, 1932.

Petition for rehearing denied June 20, 1932.

*Sparkman & Knight,* for Appellant;

*A. F. Cornelius, Alonzo B. McMullen* and *Ralph A. Marsicano,* for Appellees.

BUFORD, C.J.—This was a suit to foreclose a paving certificate issued by the City of Tampa in connection with the improvement and paving of Harbor Street in that City. The Hanchett Bond Company, a corporation, was complainant, and Tampa Dock Company, a corporation, and The City of Tampa, a Municipal Corporation, were defendants.

The bill alleged that the City of Tampa on June 2nd, 1925, pursuant to its charter authority issued certain paving certificates against the abutting property to its front footage and total cost of such improvement on Harbor Street and that the amount so assessed became a lien against such abutting property; that in case of non-payment of the amount assessed the holder of any certificate issued under the City's charter should have the right to have the whole sum assessed immediately due and payable, together with interest; that should it become necessary to enforce collection of said assessment by legal proceedings, the abutting property against which the certificate was assessed should be responsible for all costs of collection, including attorney's fees as fixed by the City Charter of the City of Tampa. It is further alleged that a certificate was issued pursuant to the paving, grading and curbing of such street against the property described in the bill in the sum of $1845.84 which became a lien against that particular property, a copy of the certificate being attached to and made part of the bill. That the first installment of the paving certificate was past due and in default, by reason of which the total amount of certificate was due, and that the complainant was entitled under the charter of the City to file its bill to foreclose the lien; that defendant below, appellant here, Tampa Dock Company, was the owner of the property and that its ownership was inferior to the claim of the complainant; that the complainant was

entitled to the amount of the certificate, with interest and attorney's fees and abstract costs. That the City of Tampa guaranteed payment of the said certificate in event same was not paid by the owner of the property described or if the owner of the certificate should fail to collect it by suit against the owner thereof and that the City of Tampa, by reason of its guarantee, had become liable to the complainant for the entire sums alleged to be due, in event it should be determined by the Court that the owner of the property described or the property itself was not liable for said certificate of indebtedness.

The bill then prayed that the defendant be required to answer under oath and that an accounting be had to ascertain the amount due and that the amount be declared to be a lien against the property described and that the defendants be required to pay the amount of the certificate with interest and costs, including $3.00 for abstract information, and attorney's fees, and that in the event the Court should find Tampa Dock Company not liable for the amount and that the property described was not responsible therefor, that the Court decree the City of Tampa to pay the amount of the certificate together with accrued interest, costs and solicitor's fees.

The bill also alleged that the complainant agreed to pay its solicitor a reasonable attorney's fee to be allowed by the court. The bill prayed for process against the two defendants.

On January 3, 1927, Tampa Dock Company filed its answer denying that the certificate of indebtedness mentioned, if issued, became and was a lien on the property described in the bill. The answer admitted the defendant to be the owner of the property described and denied that its claim to ownership was subordinate to the claim of the complainant, and amongst other things, answered alleging conditions under which the United States Gov-

ernment constructed a certain channel known as "The Estuary" in the City of Tampa and which conditions required the City of Tampa to obtain certain property on said Estuary and improve it. That the paving of Harbor Street was a necessary part of the City's improvement complying with the conditions and requirements of the Government, and it further alleged that said paving certificate should be cancelled and that the same was an obligation which the City of Tampa should pay. The answer prayed that the certificate be cancelled.

On January 3, 1927, the complainant filed its general replication to the answer of Tampa Dock Company and on February 7, 1927, the City of Tampa filed its answer in which it admited that it was authorized to assess against abutting property the total cost of any improvement made by virtue of powers conferred upon it by the Legislature of the State of Florida. That Harbor Street was a public street in the City of Tampa duly dedicated to the public; that the defendant Tampa Dock Company was owner of the property described in the bill and that it was not advised as to whether or not the whole amount of the certificate was due as alleged. That the abutting property was primarily responsible for the cost of improvement and that the City of Tampa is liable on said indebtedness only in event the abutting property does not bring sufficient in case of foreclosure to pay for such indebtedness.

The 6th paragraph of the answer of Tampa Dock Company no motion was stricken. This was the part of the answer which referred to the agreement between the United States Government and the City of Tampa in connection with creating "The Estuary" above referred to.

The answer was amended but such amendment does not appear in the record.

Then a second amended answer was filed, the 6th paragraph of which was as follows:

"Further answering said bill of complaint by way of asking for affirmative relief this Defendant says that at and prior to the 25th day of June, 1910, that A. J. Knight was the owner of that portion of Government lot 8, lying to the East of 13th Street in the City of Tampa, same being in section —— twp. 29 south, Range 19 East, Hillsborough County, Florida; that said A. J. Knight continued to own said portion of Government lot until the year 1913 when the same was conveyed by said A. J. Knight to this defendant, less that portion that had heretofore been conveyed by A. J. Knight to the City of Tampa, in pursuance of the City's plan to obtain land fronting on the Estuary for the purpose of complying with its obligation to the U. S. Government as hereinafter set forth. That this defendant was organized in 1913 when the conveyance of the portion of Government lot 8 as hereinbefore set forth was conveyed to it along with other lands of A. J. Knight, and at the time of the organization of this Defendant the said A. J. Knight became and was its President and so remained for a great number of years, and that the property conveyed to this defendant by A. J. Knight was conveyed so that said property could be improved and held by this defendant as a holding company for the said A. J. Knight, he at all times during his lifetime owned from approximately 70% to 90% of the capital stock of this defendant company, and the estate still owns approximately said amount. That this defendant company was also treated by said A. J. Knight as such holding company, and has been dealt with by the defendant City of Tampa as such holding company, and when it became necessary for the City of Tampa to acquire further property from A. J. Knight in order to comply with its obligation to the U. S. Government as hereinafter more fully set forth, the City of Tampa who was then composed of a Board of Port Commissioners, who was then the official representative of the City of Tampa, in the year 1919 called upon said A. J. Knight to furnish additional property for the purpose of en-

abling the City of Tampa to make its improvements in order to comply with its agreement to the U. S. Government. That the said Board of Port Commissioners called upon this Defendant and dealt with it as a holding company of A. J. Knight and received a deed from this defendant to a portion of Government lot 8 above set forth, and that at the time of receiving of said deed by the City of Tampa, through its Port Commissioners, the obligation of the City of Tampa to open and pave Harbor Street was recognized as an obligation of the City of Tampa, and the City of Tampa by reason of its obligation to open and pave said Harbor Street received the property so deeded by this defendant at a much less valuation than would have otherwise been placed thereon, and said City of Tampa recognizing at the time of receiving the deed to said property that it was obligated to this defendant and to its predecessor in title and the U. S. Government to open and pave Harbor Street, and to pay for same.''

The 7th paragraph was as follows:

''Further answering said bill of complaint by way of asking for affirmative relief this defendant says that on the 25th day of June, 1910, the United States of America by its Congress passed its Rivers & Harbors Act, therein and thereby adopting the project of digging what is now known as the Estuary, in the City of Tampa, and in the law so passed was contained the following condition:

'That no expenditure be made on that part of the Harbor between the new turning basin and Ybor City, until the Secretary of War is assured that the local municipality will construct wharves or slips having an available length not less than 1400 feet, which shall be open for the use of the general public under reasonable regulations and charges and also that the Municipality has obtained such control of the property for at least 700 feet on each side of the proposed Ybor Channel, throughout its length as will insure its use primarily in the interest of general commerce on equal terms to all, and that all wharfage charges and regulations shall be reasonably and

fully controlled by the Municipal authorities and subject to the approval of the Secretary of War.'

That the City of Tampa in partial compliance with the above conditions acquired within certain property and rights as will more fully appear by agreements of the City of Tampa and property owners as herein mentioned as the said agreements appear of record in the office of the Clerk of the Circuit Court, Hillsborough County, Florida, in deed book 129, page 385, and deed book 146, page 501, reference to which agreements is hereby prayed. That from time to time changes in the plans of development of the Estuary were made, but that finally on June 10, 1919, an agreement was reached between the United States Government and the City of Tampa, whereby the map of the Estuary Zone, recorded as hereinafter mentioned was adopted.''

The 8th paragraph was as follows:

''This defendant further alleges that the Congress of the United States passed a Rivers & Harbors Act on August 8, 1917, subject to the conditions set forth in House Document #1345, 64th Congress, 1st Session, which contained the following provision:

'An Act making appropriations for the construction, repair, and preservation of certain public works on rivers and harbors, and for other purposes, shall be so construed as to prevent the use of any part of the Ybor Estuary Zone for industrial or other legitimate purposes when the same is not needed for commercial uses, not to exclude the building and operation of a railroad or railroads by private parties or railroad companies under such rules and regulations as the Secretary of War may prescribe, subject to the right of the City of Tampa to construct and operate a municipal railroad on said Estuary Zone as set forth in said report.'

That the conditions in House Document #1345, referred to in said Rivers & Harbors Act are as follows:

'That no work shall be done by the United States under such project until the City of Tampa shall have given assurance satisfactory to the Secretary of War that the City of Tampa will within a reason-

able time, and when in his opinion the facilities are needed, acquire full ownership and possession of sufficient land for the establishment of terminals fronting on the Ybor Estuary; will complete the construction thereon of piers and slips in accordance with the plans for the development of the Ybor Estuary Zone heretofore approved by the Secretary of War, or such modified plans as he may approve, will build adequate warehouse and storage sheds on these piers and equip them with suitable rail connection and freight handling appliances; will construct and put in operation a municipal railroad having physical connection with all railroads entering the City of Tampa and serving the channel frontage on both sides of the Estuary in accordance with the plan of development of the estuary zone approved by the Secretary of War; will open, pave and make available for use a sufficient number of streets and highways to give proper access to all parts of the estuary channel frontage; and will open these terminals for business under a schedule of reasonable wharfage charges and a set of regulations to be approved by the Secretary of War for the control and operation of the property fronting on the Estuary channel, designed to insure its use primarily in the interests of general commerce on equal terms to all; and provided further that no work shall be done in the channels constituting the harbor of Tampa proper until local interests shall agree to provide without cost to the United States or to any contractor for the work, a suitable place for deposit of material dredged from these channels.'

That in and by the Act of Congress passed June 25, 1910, and the subsequent requirements thereto, and the Act of Congress passed on August 8, 1917, and previous requirements, that the defendant City of Tampa as a prerequisite to digging of the said channel was required to obtain certain properties abutting on said proposed channel, that among other conditions imposed upon the City of Tampa was that the property so acquired should be rendered accessible by the opening and paving of necessary streets in order that any com-

merce that might be carried on upon the City's property so acquired might be free and open to all alike. That in order to render said property accessible to all it became and was necessary to open, grade and pave Harbor Street, which is the street the paving of which the certificate complained of was issued, and that the obligation to so open and pave said Harbor Street became and was, under the condition of the acquiring of the property by the City of Tampa abutting on the Estuary channel as required by the United States Government, one of the obligations of the City of Tampa, and it became and was the duty upon the compliance by the United States Government in digging the Estuary Channel, which it has done, the duty of the City of Tampa to open and pave Harbor Street so as to render the City's property accessible to all. That said Harbor Street is a necessary street to furnish access to the City's property so acquired as aforesaid, as will more fully appear by the map or plat of the said Ybor Channel or Estuary and surrounding property, as recorded in Plat Book 1, page 148, of the Public Records of Hillsborough County, Florida; and that the opening, grading and paving of said Harbor Street by the City of Tampa was only fulfilling the promise and condition for which the City of Tampa has given bond to the United States Government and as it had agreed with the United States Government and this Defendant and its predecessor in title, and other parties, to do, and the issuance of the certificate complained of and sought to be foreclosed was wrongful on the part of the City of Tampa and the making of the same a lien upon the property of this Defendant was also wrongful.''

All these paragraphs were stricken on motion.

Thereafter the cause was referred to a Special Master to take and report testimony. In due course the matter came on for final hearing. Final decree was entered in favor of the complainant and declaring a lien against the property described to enforce payment of the amount of the certificate with interest, costs and attorney's fees. Tampa Dock Company then filed notice of appeal.

It has been necessary to make a rather long statement concerning the allegations and results of the pleadings, as that appears to be the only way in which we can give the bench and bar the benefit of knowing what points of law are to be here determined with the facts to which they are to be applied.

Appellant presents four questions which, it is said, are to be determined by this Court. Question One is:

"When municipality is authorized to construct and operate terminals to promote growth and development of City and welfare of its citizens, and do all things necessary or advantageous in connection therewith, to issue bonds and levy special annual tax to pay costs thereof, and as part of general terminal improvement plan paves necessary abutting street, but under different and special assessment law, which does not provide for hearing on special assessment before same is made and becomes a lien, issue certificate therefor, is it proper in suit to foreclose such a paving certificate to sustain exceptions to, or to grant motion to strike part of answer alleging assessment to be unjust, unequitable and without regard to any benefits to property assessed?"

The certificate attached to and made a part of the bill of complaint recites that the certificate is issued under the provisions of an Act of the Legislature (reciting its title) approved May 22, 1899, as amended by chapter 5363, Laws of Fla., approved June 8, 1903, and chapter 5545, Laws of Fla., approved June 5, 1905, and chapter 7249, Laws of Fla., approved June 4, 1915, and chapter 7718, Laws of Fla., approved June 8, 1917, and, although the certificate does not recite the same, the Act under which the certificate was issued was further amended by chapter 8364 Laws of Fla., Acts of 1919.

Sec. 34 of chapter 5363, Laws of Fla., 1903, is as follows:

"In all cases provided in this act for the paving, grading, curbing, laying out, opening, repairing, or

otherwise improving streets, parks, alleys, or other highways within the limits of the City of Tampa, including the laying, constructing or repairing of sidewalks in front of any property within the limits of the City of Tampa, as soon as said work shall have been completed, and prior to its acceptance by the board of public works, in the event the same is done under contract, said board of public works shall cause to be published a notice of the completion of said works, which notice shall contain a statement of the total cost of the work, and of the total frontage of lots liable to liens therefor, and the amount of the lien per foot front claimed by the city, but in such notice the name of the owner or owners or other persons interested in said lots need not appear, but only a sufficient description of the lots as to make it capable of identification shall be necessary; and said notice shall set a day for a hearing of all complaints which the owner or owners or other persons interested in said lots may desire to make against the certification of the cost of such improvement to the City Council of the City of Tampa. After the date of such hearing, if no legal reason is shown why the cost of the said improvement shall not be certified to the city council of the City of Tampa, as provided by this act, the board of public works shall, after the acceptance of said work, in the event the same is done under contract, certify to the City Council of the City of Tampa the entire cost of such improvements, and the said City Council of the City of Tampa shall assess the said cost against the abutting property in the manner hereinbefore provided.''

This section was amended by chapter 5545, Acts of 1905, by the elimination of the word ''parks'' but no change appears to have been made in regard to publication of notice of completion of work and providing for hearing of complaints by property owners. There is no allegation that the provisions of this Act were not complied with.

Section 8 of chapter 8364, Acts of 1919, amending

Sec. 36 of the Charter of the City of Tampa, provides, in part, as follows:

"In no event shall the amount of validity of the liens or certificates of indebtedness as provided for by this charter be questioned in any direct or collateral proceeding instituted more than two months after the maturity of any installment of principal or interest on such liens or certificates of indebtedness, and the term 'abutting property' as used in this Charter shall include adjacent property, and all assessments heretofore made upon adjacent property be and the same are hereby validated and confirmed."

The certificate attached to the bill of complaint shows that the assessment was made June 2, 1925, in the sum of $1854.85, being payable in five annual payments on or before one, two, three, four and five years after date, with interest at rate of 8% until paid. Therefore, it is observed that the first installment became due June 2, 1926. The bill of complaint was filed on the 8th day of November, 1926, and the answer setting up the defense and purporting to contest the validity of the assessment was filed November 15, 1927. Therefore, it will be seen that the defendant was estopped by the terms of the statute to contest the validity of the assessment in the manner attempted in this case. See Abel v. Town of Boynton, 95 Fla. 984, 117 Sou. 507, and cases there cited; also Summerland, Inc. vs. City of Punta Gorda, 101 Fla. 550, 134 Sou. 611.

The second question, as presented by appellant, is:

"Is it proper for the court in suit to foreclose a paving certificate, under circumstances as set forth in question one, to sustain exceptions to or grant motion to strike portion of answer, setting up agreement between municipality issuing certificate and United States Government, requiring municipality to construct and operate, and maintain docks and terminals in accordance with the requirements of said agreement, under plans to be approved by Secretary of War, and to open, pave

and make available for use a sufficient number of streets to give proper access to all parts of channel frontage and other requirements of said agreement, designed to insure the use of said terminals primarily in the interest of general commerce on equal terms to all?''

The disposition of the first question propounded is applicable to this question and it appears that there was no error in the chancellor answering the same in the affirmative.

The third question presented is:

''When municipality issues paving certificate under certain legislative acts specifically set forth in certificate, which acts provide' that certificate may be sued upon by municipality, or by holder in name of municipality, is it proper for the court to permit foreclosure of such certificate in suit by holder in name of holder?''

The answer to this question is found definitely stated in Sec. 8 of Chapter 8364, Acts of 1919, amending Sec. 36 of the Charter of the City of Tampa, wherein the legislature provided:

''In any suit brought to enforce such lien or collection of the amount due upon such certificate of indebtedness, a copy of the entry of such lien in the Street Improvement Lien Book duly certified by the Clerk of the Board of Public Works, under the corporate seal of the city, or the original certificate of indebtedness issued on account of such lien, shall be and constitute *prima facie* evidence of the amount and existence of the lien upon the property described, and in all cases mentioned in this Charter, where the City of Tampa has acquired, or may hereafter acquire liens for improvements, such liens may and shall be transferred by the sale and delivery of the certificate of indebtedness issued by the City of Tampa in pursuance thereof, and such liens, or any of them may be enforced in the name of the holder thereof in the following manner: first, by a bill in equity; second, by a suit at law.''

The fourth question presented is:

''When answer under oath, sworn answer being required, expressly denies material allegations of bill,

and plaintiff offers no evidence on issues thus raised, should objections to defendant's questions soliciting evidence on such material issues be sustained or evidence thereon be stricken and should court render decree in favor of complainant and against defendant?"

This question is not applicable to the case at bar because that part of Sec. 8 of Chapter 8364 amending Sec. 36 of Charter of the City of Tampa, which we have hereinbefore quoted, provides:

"A copy of the entry of such lien in the Street Improvement Lien Book duly certified by the Clerk of the Board of Public Works under the corporate seal of the city, or the original certificate of indebtedness issued on account of such lien shall be and constitute *prima facie* evidence of the amount and existence of the lien upon the property described, etc." * * *

Therefore, when the original certificate of indebtedness was introduced in evidence it was *prima facie* evidence of all things recited therein and while the answer under oath has the probative force of evidence, the questions involved between the recitations in the certificate and the denials contained in the answer became questions to be determined by the chancellor on consideration of the answer, giving its probative force, and the certificate, giving it its *prima facie* value as evidence, as fixed by the statute.

We cannot say that the finding in favor of the certificate by the chancellor was clearly erroneous and, therefore, his findings in that regard should be affirmed here.

For the reasons stated, the decree appealed from should be affirmed and it is so ordered.

Affirmed.

WHITFIELD, TERRELL AND DAVIS, J.J., concur.

ELLIS AND BROWN, J.J., dissent.