Isaac A. Stewart, *et al.* v. City of DeLand

188 So. 590
Division B.
(Four cases)
Opinion Filed April 21, 1939.
Rehearing Denied May 18, 1939.

732

*Stewart & Stewart,* for Appellants;

*Murray Sams,* for Appellee.

PER CURIAM.—Four appeals are involved here, and all will be considered and disposed of together. These appeals are from final decree foreclosing special assessment liens. All of the four cases are alike except as to the amounts due and the land involved.

On January 19, 1931, bills of complaint were filed by the City of DeLand against the owner or owners of "Lot F, Block 13, Rich's De Land," in Case number 2925, "Lot E, Block 13, Rich's De Land," in case number 2936, "Lot G, Block 13, Rich's De Land," in case number 2927, and "Lot E, Block 12, Rich's De Land," in case number 2928, seeking to foreclose the special improvement liens against said property, and to recover attorneys fees and other costs in connection with the foreclosure.

Demurrers, in each case, embodying 28 grounds, were overruled by the chancellor, and defendants allowed until the September rule day of 1931, in which to answer or plead to the bills.

Answers were filed thereto on October 5, 1931, denying the material allegations of the bills of complaint.

Motions to strike the answers were denied; and motions to strike portions of the answers were granted.

Testimony was taken and exhibits were filed before Special Examiner, Hon. William S. Fielding.

After final hearing before him, the chancellor entered final decree in the causes, finding the several amounts due the City of DeLand by virtue of the Special assessment liens, and ordering that these amounts found to be due, and all costs and expenses of the suits, including solicitor's fees, abstract costs, Special Master's fees, clerk's costs, sheriff's fees and advertising costs, be paid within three days from

the date of the decree, or the property be sold at public sale during legal hours of sale to satisfy the same; and that all persons interested in said property be thereafter foreclosed of any right in and to said property.

From these final decrees, the appeals were taken.

The statutory authority under which these improvements were made is found in Section 1 of Chapter 7146, Acts of 1915, as follows:

"When at any time the City Council of the City of De-Land shall decide to pave, grade, curb, lay out, open repair or otherwise improve any street, alley or highway, or any part thereof, the City Council shall pass a resolution or ordinance ordering the same to be done, and thereupon the Board of Public Works shall advertise for bids for making said improvements, which said advertisement shall contain among other things a description of the material to be used, with the width of the pavement, if a street is to be paved, and shall designate with reasonable certainty the limits within which said work is to be done and the nature thereof; and in which said advertisement the Board of Public Works may reserve the right to reject any or all bids. In advertising for such bids the Board of Public Works may within their discretion advertise for separate bids for grading, paving and curbing, and the City Council may enter into separate contracts therefor. Whenever any bid for such improvement has been accepted and the improvements completed under the terms of the contract, and the same shall have been approved by the Board of Public Works after duly advertising and giving the public the hearing hereinafter mentioned, the Board of Public Works shall certify the entire cost of said improvment to the City Council, whereupon the City Council shall assess against the property abutting on either side of the street, alley or highway so improved, one-third of the cost of such improvement, and the other one-third is to be borne by the

City. Such assessment shall be made in proportion to the frontage of such abutting property on said street, alley or highway so improved. Provided, however, that the entire cost of such improvements at the intersections of streets shall be paid by the City."

The statutory authority under which the City of DeLand assessed abutting property for part of the cost of the improvements made is found in Section 4 of Chapter 7146, Acts of 1915, as follows:

"In all cases provided in this Act for the paving, grading, curbing, laying out, opening, repairing, or otherwise improving the streets, alleys, or highways within the limits of the City, laying out, constructing, or repairing the sidewalks in front of any property within the limits of the City, whenever said work or any portion thereof shall have been completed, and prior to its final acceptance or approval, the Board of Public Works shall cause to be published a notice of the completion of said work, which notice shall contain a statement of the total cost of the work and the total frontage of lots liable to liens therefor, but in such notice the name of the owner or owners or other persons interested in said lots need not appear, but only such description of said lots as to make them capable of identification shall be necessary, and said notice shall state a date not less than ten days from the date of publication when the City Council will hear all complaints which the owner or owners or other persons interested in said lots may desire to make against the certifications of the costs of such improvements to the City Council. After the date of such hearing if no sufficient reason be shown why the cost of the said improvements shall not be certified to the City Council, as provided in this Act, the City Council shall then assess one-third of the cost thereof against the property on either side of the street, and shall issue certificates of

indebtedness therefor. The remaining one-third of such cost shall be borne by the City."

Plaintiffs in error raise questions as to whether (1) the resolution, B-58, authorizing the improvements to be made, was duly and regularly passed by the City Council, in compliance with the provisions of Chapter 7146, Acts of 1915; (2) the notice for sealed bids given by the Board of Public Works, complied with the provisions of Chapter 7146, Acts of 1915; (3) any contract was legally let for this paving; (4) any meeting of the City Council was held on April 16, 1917, or an adjournment thereof, pursuant to notice given by the Board of Public Works, at which meeting a hearing was had to hear complaints against the certificate of cost of improvements under the provisions of Chapter 7146, Acts of 1915; (5) the resolution of May 7, 1917, assessing the costs of the improvements was passed pursuant to any legal notice required by Chapter 7146, Acts of 1915; (6) said resolution of May 7, 1917, was ever passed or considered at any regular session of the City Council, and no record thereof having been noted; and (7) as to whether the resolution of February 12, 1917, prescribing the form and details of the certificates of indebtedness, was ever duly and regularly adopted.

Section 6 of the authorizing Act, Chapter 7146, Acts of 1915, provided, as follows:

"In no event shall the amount or validity of the liens or certificates of indebtedness as provided for in this Act be questioned in any direct or collateral proceeding instituted more than six months after the issuance of such certificates of indebtedness by the City. In any suit brought to enforce the lien of such certificates of indebtedness, or the amounts due upon them, *the original certificates of* indebtedness issued on account of such liens *shall be* and constitute *prima facie evidence* of the *amount and existence*

*of the lien upon the property described;* and in all cases mentioned in this Act, where the City has acquired or may hereafter acquire liens for improvements, such liens or any part of them may be enforced in the following manner by the City, or in the name of the City by the holder thereof": (Emphasis supplied.)

The certificates of indebtedness issued under this Act are thus made *prima facie* evidence of the amount and existence of the lien claimed. In the case of Tampa Dock Co. v. Hanchett Bond Co., 105 Fla. 470, 141 So. 526, an amendment to the Charter of the City of Tampa provided that the original certificates of indebtedness should constitute *prima facie* evidence of the amount and existence of the lien, on the property described. And in that case we said:

"Therefore, when the original certificate of indebtdeness was introduced in evidence it was *prima facie* evidence of all things recited therein and while the answer under oath has the probative force of evidence, the questions involved between the recitations in the certificate and the denials contained in the answer became questions to be determined by the chancellor on consideration of the answer, giving its probative force, and the certificate, giving it its *prima facie* value as evidence, as fixed by the statute.

"We cannot say that the finding in favor of the certificate by the chancellor was clearly erroneous and, therefore, his findings in that regard should be affirmed here."

The answer in the instant case is not sworn to and consequently has no probative value as did the answer in the case of Tampa Dock Co. v. Hanchett Bond Co., *supra.* The certificates of indebtedness recited that "the City of DeLand, * * * has caused this certificate of indebtedness to be issued and by virtue of Chapter 7146, Acts of 1915, providing among other things for the assessment against

abutting property of a part of the cost of street improvements, and for the enforcement of the collection thereof, and this certificate is hereby declared to be a lien upon the following described real estate situated in the City of De-Land * * *," When each of the certificates of indebtedness involved was introduced in evidence, it was *prima facie* evidence of these recitals quoted together with all others contained in the certificates. See Tampa Dock Co. v. Hanchett Bond Co., *supra*. The burden of proof then shifted to the defendants to prove that these recitals were untrue. The seven contentions made here, and recited above, were considered by the chancellor below on conflicting evidence, and determined by him in favor of the City of DeLand. We cannot say that the chancellor in so finding, committed reversible error.

The only substantial question, in these enumerated contentions, is whether there was a meeting held at which meeting complaints in regard to the certificate of the cost of the improvements and the assessments, could be heard. It was admitted that notice for such hearing was given, and since the recital in the certificates of indebtedness that "said assessment having been duly made against said property for said improvements by the City Council of the City of DeLand on the 7th day of May, A. D. 1917, as required by law," is *prima facie* evidence that the hearing was held, it devolved upon the defendants to rebut this *prima facie* proof by showing that they had no opportunity to be heard. Upon conflicting evidence, the chancellor found that this *prima facie* proof had not been rebutted, and we are not warranted in disturbing that finding.

The Legislature of 1931, passed Chapter 15, 167, which provided as follows:

"That all acts and proceedings of the City Council of the City of DeLand, a municipality located in the County of

Volusia, State of Florida, and of the Board of Public
Works of said City, and of the engineers, attorneys and
other agents, officers and employees of said City, in con-
nection with paving and curbing Woodland Boulevard and
New York Avenue in said City of DeLand in the years
1916 and 1917, and in certifying the cost of said improve-
ments, and assessing a portion of said cost against abutting
property, and issuing certificates of indebtedness against
such abutting property, and redeeming such of said cer-
tificates as have been redeemed by the said City of DeLand,
and all such certificates of indebtedness and all liens claimed
by the said City of DeLand against the property so assessed,
be and they are hereby severally ratified, confirmed, vali-
dated, legalized and made and declared valid, legal and
binding in all respects and for all purposes whatsoever."

This statute was designed to cure all procedural defects
enumerated therein, and to render valid all acts and pro-
ceedings mentioned therein. Thus all formal defects that
might have been available in defense of foreclosure of the
special improvement liens have been cured by this vali-
dating act. In this connection see Webb v. Scott, 129 Fla.
111, 176 Fla. 442.

Chapter 7146, Acts of 1915, the authorizing Act, pro-
vided as follows:

"* * * and in the decree or judgment, as the case may
be, for the enforcement or collection of the amount for
which said lien shall be given, decree or judgment shall
also be rendered for a reasonable attorney's fee, not to
exceed twenty-five dollars, for the institution of the suit,
and ten per cent on the amount recovered, together with
the costs of the proceeding; which attorney's fees and costs
shall be a lien upon the said land, and shall be collected at
the time and in the manner provided for the collection of
the amount for which the lien was originally given, but in

no event shall the City be liable for the payment of the attorney's fee herein provided for."

This statute, Chap. 7146, Acts of 1915, was ample authority for the Chancellor to award attorney's fees and abstract costs as payable from the proceeds of the sale. See Gulf View Apartments v. City of Venice, 108 Fla. 41, 145 So. 842.

The twelfth and final question presented was whether the Legislature had the power to authorize the City of DeLand, by Chapter 7146, Acts of 1915, to appropriate, widen and construct, as a street of the City, the thoroughfare involved herein, which was, at that time, a road under the supervision of the Lake Helen-DeLand Special Road and Bridge District.

Chapter 7146, Acts of 1915, authorizing the City of De-Land to make these improvements, provided that it (the Act) should become effective immediately upon its passage and approval by the Governor, or upon its becoming a law without such approval. It was approved by the Governor on May 10, 1915. The reply brief of plaintiffs in error states that the petition seeking creation of the Lake Helen-DeLand Special Road and Bridge District was filed with the County Commissioners May 3, 1915, but the election regarding the District was not held until July 15, 1915, and the District was not declared to be a District until August 3, 1915, which was several months after the City of DeLand had been given authority by the Legislature to make these improvements. In addition to this, it appears from the resolution, authorizing the City of DeLand to make these improvements that the Lake Helen-DeLand Special Road & Bridge District had paved or was going to pave the streets to a certain width, and that the City of DeLand was to make the streets wider by paving them to a greater width than undertaken by the District. The resolution

stated that each street was to be paved for a width of a certain number of feet, the width varying with the street involved, "in addition to the paving to be done by said District."

The City of DeLand was, therefore, given authority to make these improvements, before the Special Improvement District was created, and the City was making the improvements where the District had not acted or was not about to act. There was no conflict of jurisdiction so as to oust the City of its right to act in these matters; and consequently this question presented is without merit.

No reversible error having been made to appear in the several final decrees from which appeals were taken, they are each accordingly affirmed.

Affirmed.

TERRELL, C. J., and WHITFIELD, BROWN and BUFORD, J. J., concur.

CHAPMAN, J., dissents.

THOMAS, J., not participating because case was presented before he became a member of this Court.