ALANSON SHELEY v. CITY OF DETROIT.

*Legislative policy—Apportionment of paving tax.*

| 45 | 431 |
|----|-----|
| 115 | 555 |

| 45 | 431 |
|----|-----|
| 124 | 436 |

| 45 | 431 |
|----|-----|
| f149 | ²547 |

The Legislature, when acting within the sphere of its powers in making laws, passes finally upon all questions of policy and of equity.

Local assessments may be apportioned according to frontage under legislation which permits that method to be followed.

The Legislature has power to impose the burden of repaving, as well as of paving streets, upon the abutting owners.

Appeal from Wayne. Submitted Jan. 13. Decided Jan. 28.

INJUNCTION to restrain sale for taxes. Dismissal affirmed.

*Theodore Romeyn* for complainant. Assessments by frontage, when arbitrarily made, are invalid: *Clapp v. Hartford* 35 Conn. 166; repairing streets is a municipal duty: *Hammett v. Philadelphia* 65 Penn St. 146; *Sutton's Heirs v. Louisville* 5 Dana 28.

City Counselor *F. A. Baker* for defendant. The power to compel the owners of abutting property to pave a street ordinarily extends to repaving: 2 Dill. Mun. Corp. § 619; *Gurnee v. Chicago* 40 Ill. 165; *McCormack v. Patchin* 53 Mo. 33; *Municipality v. Dubois* 10 La. Ann. 57; *Lafayette v. Fowler* 34 Ind. 140; Cooley on Taxation 422; *Willard v. Presbury* 14 Wall. 676; *Bradley v. McAtee* 7 Bush 667; *Broadway Church v. McAtee* 8 Bush 508.

COOLEY, J. This is a bill to restrain the collection of a pavement tax. Complainant is owner of a lot on Woodward avenue, in the city of Detroit, which has been paved and

repaved several times, sometimes at the expense of abutting owners and sometimes not, according as the law in force at the time provided. Complainant avers that he has paid two assessments for repaving which were levied on the owners of abutting property. In 1879 the common council passed resolutions for repairing and repaving a section of this avenue, including that portion upon which complainant's lot abutted, at the expense of the lots fronting thereon, and took steps for the purpose which resulted in an assessment upon complainant of $171.02. The whole expense of the repaving was assessed upon the abutting lots in proportion to the street front. The new pavement was to be of cedar blocks, and an old pavement of cobble stone, which complainant avers was not worn out, had to be removed for the purpose. It is insisted by complainant that an assessment according to frontage is not an assessment in proportion to benefits received, and is unjust and unwarranted by legal principles. No question is made of the sufficiency of the legislation under which the common council assumed to act to authorize the action taken, if the legislation is itself constitutional, but it is denied that it is so. The learned counsel for the complainant states the question at issue to be: The right of the Legislature to authorize municipal authorities to require the owners of property on streets in the city to continue, at their own expense, to repave them, whenever ordered by the common council, and to do so in reference to the extent of frontage, or, in other words, of territory upon the street, with no reference at all as to values.

The questions, then, are questions of legislative power. Whether this method of apportioning the cost of pavement or of repavement is equitable or just or politic, is in no way involved in this suit, and we should depart from our legitimate province if we were to volunteer an opinion upon it. The Legislature, acting within the sphere of its powers in the making of laws, judges, and judges finally, upon all questions of policy and of equity. If the Legislature declares the cost shall be collected by general levy, or on the other hand shall be levied upon abutting lots or their owners according to

values, or to assessed benefits or to frontage, the determination binds us absolutely and conclusively, provided we discover no want of legislative authority. We must then address our attention to that point, and to that exclusively.

Now it has been several times decided in this State that it was competent under legislation permitting it, to apportion local assessments according to frontage. The leading case of *Williams v. Mayor* 2 Mich. 560 was not disturbed by *Woodbridge v. Detroit* 8 Mich. 274, and was expressly approved in *Motz v. Detroit* 18 Mich. 495, after most thorough argument and careful and deliberate examination. The case of *Jones v. Board of Water Commissioners* 34 Mich. 273, to which complainant calls attention, is foreign to this controversy. It was expressly held in that case that water rates were in no sense taxes, and they were held not apportionable by frontage on that very ground. *Thomas v. Gain* 35 Mich. 155 has quite as little relevancy. There was an attempt in that case to apportion a sewer tax in manifest disregard of any principle of justice or equity, and the Court rejected it for that reason, and as having no lawful principle to sustain it. In that very case *Williams v. Mayor* was recognized, and it was said (p. 161) that "the idea that underlies statutes for this purpose is, that the benefit to the abutting lots is generally in proportion to the length of their respective fronts, and that as a rule this principle of apportionment is more just than any other." It would be strange indeed if we could hold an apportionment to be void for its injustice when it had been prescribed by law for the very reason that justice and equity require it.

We might fill pages with the names of cases decided in other states which have sustained assessments for improving streets, though the apportionment of the cost was made on the same basis as the one before us. If anything can be regarded as settled in municipal law in this country, the power of the legislature to permit such assessments and to direct an apportionment of the cost by frontage, should by this time be considered as no longer open to controversy. Writers on constitutional law, on municipal law, and on the

law of taxation have collected the cases, and have recognized the principle as settled, and if the question were new in this State, we might think it important to refer to what they say. But the question is not new ; it was settled for us thirty years ago.

It is urged, however, that even conceding it to be admissible to charge the owners of abutting lots with the cost of the first pavement of the street, the special exaction should stop there, and all repaving should be by general levy.   But the learned counsel for complainant does not undertake to explain to us how it can be that the legislature can have power to order the first improvement at the expense of adjoining owners, and still not have power to order any subsequent pavement on the like basis.   The argument to that effect appears to assume that a pavement once laid is an improvement which is to last for ages, like some substantial structure of granite or marble; and that the adjacent proprietors having incurred the expense of making it, the comparatively insignificant cost of keeping it in condition for use from year to year ought properly and justly to be taken upon the shoulders of the community.   But no assumption can be more unfounded.   A pavement is but a temporary improvement of the street.   It may last for five years, or ten, or twenty, but at the end of some short period the street will need a new one, and the question who shall be at the cost of it is the same as before and rests upon the same equities.   It can never be said of any street that it is permanently paved. It is paved for the time being only; and the pavement will wear out or become unsuitable, just as a sewer will decay or become inadequate to the needs it was intended to meet.

If there is any soundness in the theory on which the bill is filed, it must be found in this: that when the adjacent owners have once made the street a substantial thoroughfare at their own expense, a principle of constitutional justice requires that the city should afterwards maintain it as a substantial thoroughfare.   But any such principle rests upon such a basis of uncertainty that it would not only be difficult of application, but lead to the most absurd results.   When

shall it be said that the duty of the property holder in making the thoroughfare is fully performed? Is it when the street is planked? Or when it is laid with cobble stone? Or when it is experimented upon with concrete or with green pine blocks? Or only when dry cedar blocks are laid, or perhaps blocks of granite? Does legislative power depend upon the uncertain opinions of witnesses as to the substantial nature or permanency of some particular street improvement? And if it can be exercised but once for all time, as to any particular parcel of land, shall the power a generation hence depend upon the uncertain recollection of old inhabitants as to the nature of the first improvements, and how the cost was borne, or perhaps upon the care with which city records are made up and kept?

Examine the case in whatever light we will, the supposed principle rests upon a fallacy. All street improvements are ordered in view of existing needs, and are, therefore, of one kind at one time and another at another time, as the needs are supposed to require. To-day in an incipient city they are cheap, imperfect and temporary; but ten years hence, if the city fulfils its promise, they may be expensive and constructed with greater regard to durability. The equity that the lot owners shall pay for the cheap, temporary improvement is no greater than that they or their successors in ownership shall pay for that which is more expensive, but which answers the local needs more perfectly and makes their lots more valuable. It will be no less fifty or a hundred years hence, though the improvement may have been renewed many times in the interval. It rested in the first place on the undoubted fact that all these local improvements, while they are public benefits in a general sense, have a special and peculiar value to the lots fronting upon them, and tend to increase their value in a degree bearing some proportion to the cost of the work. Let the improvements go to decay and the value of the lots will deteriorate; let them be renewed, and the price immediately comes up again. Leave a business street without a pavement, and business will be driven from it. These are facts of common observation, but they need no experience to

prove them; they are what our reason would teach us to expect. There is ample ground, therefore, upon which the legislature may act when they decide that in their opinion considerations of equity require the cost of paving to be imposed upon the owners of abutting lots. We do not hold that they decide right, for that is not our concern; we only decide that they have the power and the discretion to do what they have done.

The decree must be affirmed with costs.

MARSTON, C. J. and GRAVES, J. concurred.

CAMPBELL, J. While I am not satisfied that the legal objections to the charter and ordinance regulations have not some force, I am, nevertheless, of opinion that on this record complainant has not made out a case for relief.

We cannot assume, under the pleadings, that the improvement was not one which the city could make, and charge to a district for assessment. We cannot in this case have any certainty that complainant has been seriously, if at all, overburdened beyond what his assessment would have been if made in another way. The proceedings are regular, and unless he shows some distinct and tangible grievance of a serious character, he makes out no cause for equitable interference.

I concur in affirming the decree.