OCEAN BEACH HOTEL COMPANY, a Florida Corporation, *et al.,* v. TOWN OF ATLANTIC BEACH, a Municipal Corporation.

2 So. (2nd) 879

En Banc

Opinion Filed June 10, 1941

Rehearing Denied June 30, 1941

446

*Lee Guest* and *O. O. McCollum, Jr.,* for Petitioners;

*Charles Cook Howell* and *Charles Cook Howell, Jr.,* for Respondents.

CHAPMAN, J.—This case is here on petition for writ of certiorari as provided for by Rules 27 and 34 of this Court. The alleged erroneous interlocutory orders were dated August 15, 1940, and October 11, 1940, and entered by the Honorable Miles W. Lewis, Circuit Judge in and for Duval County, Florida. The challenged orders sustained motions to strike certain defensive matter appearing in the answers of the defendant interposed by them to a bill of complaint brought by the Town of Atlantic Beach for the purpose of foreclosing special assessment liens.

The record discloses that the Town of Atlantic Beach, acting through its council, under the provisions of Chapter 16311, Special Acts of 1933, Laws of Florida, on July 26, 1933, adopted a resolution designating and describing a certain shore line to be protected by a seawall. On July 31, 1933, the Town of Atlantic Beach enacted an ordinance providing that abutting property owners on or to the described and designated seawall should be assessed 83% of the total cost of the project in proportion to the benefits to the abutting property and prorated by the front foot rule. See Section 3 of Chapter 16311, *supra.* The remaining 17% of the costs of the construction of the seawall

was to be paid by the Town of Atlantic Beach and raised by ad valorem taxation levied against all the property of said town subject to taxation.

The plans and specifications for the project were duly prepared, with an estimated cost thereof, which was fixed at the sum of $150,000.00, and the issuance of bonds by the Town of Atlantic Beach was submitted to the freeholders at an election authorized by Chapter 16311, *supra*. The issuance of bonds necessary to construct the seawall according to the plans and specifications at a cost of $150,000.00 was duly approved and ratified by the freeholder electors at an election called under the provisions of the Act.

On July 30, 1934, the proposed bonds were confirmed and validated by a decree of the Circuit Court of Duval County, Florida. A contract for the construction of the seawall was let by the town and the seawall duly erected and completed some time prior to September 15, 1937, when the town council adopted a resolution in which the total costs of the seawall were definitely fixed at the total sum of $175,265.85; and the assessment roll of special assessments and all the property abutting on the seawall were assessed and charged for this total sum and prorated by the front-foot rule on the theory that the abutting property received the benefits of these expenditures for the alleged improvements. We are unable after a careful study of the record to reach the conclusion that an excess charge of $25,000.00 occurred. On April 4, 1936, the defendants paid the first installment of the nineteen in the sum of $1,438.69, leaving eighteen installments due on the special assessments imposed.

Several questions are posed in the brief of petitioners for a decision by this Court predicated on the order

of the circuit court dated August 15, 1940, sustaining a motion of the plaintiff below to strike the amended answer, and parts thereof, filed by the defendants on April 12, 1940. Sections 9 and 10 of Chapter 16311, Special Acts of 1933, are viz.:

"Section 9. Special assessments for the improvements herein authorized shall be payable by the owners of the property abutting upon the said improvement, in the manner stipulated in the resolution providing for said special assessments, and the said special assessments shall be and remain liens superior in dignity to all other liens except liens for taxes, until paid, from the time of the assessments upon the respective lots and parcels of lands assessed, and said special assessments shall bear interest at the rate of six per cent per annum on the balance remaining due and unpaid from time to time. Interest on any past due installment shall be at the rate of twelve per cent per annum from the due date of such installment.

"Section 10. Each annual installment shall be paid upon the date specified, together with the interest hereinafter provided for, and upon the failure of any property owner to pay any installment when due, or the interest provided for, the Council shall cause to be brought the necessary legal proceedings by a bill in chancery, to enforce payment thereof, with all accrued interest, together with all legal costs incurred, including a reasonable solicitor's fee to be assessed as a part of the costs, and in the event of default in the payment of any installment on an assessment, or any accrued interest on an assessment, when the same becomes due, the whole assessment, with interest thereon, shall immediately become due and payable and subject to foreclosure. In the foreclosure of the special assess-

ment, service of process against unknown or nonresident defendants may be had by publication as now provided by law in other chancery suits. The foreclosure proceedings shall be prosecuted to sale and conveyance of the property involved in said proceeding as now provided by law in suits to foreclose mortgages."

It is contended here that the order striking the amended answer was erroneous as the stricken answer tendered meritorious issues, viz.: (a) Chapter 16311 authorized the levy of the special assessments and the total costs thereof were exceeded by $25,000.00 the estimated costs and a variance existed between the plans and specifications; (b) the abutting property owners were entitled to a rebate, in part, of the costs of the construction of the seawall; (c) items appear in the costs of the construction of the seawall not approved by the freeholders; (d) the suit at bar attempts to collect an amount in excess of the estimated costs of the seawall; (e) the payment by defendants of the first installment on April 4, 1936, estops the defendant from paying into the registry of the court the amount claimed as balance due on the assessments and all defenses to the enforcement of the assessments were waived; (f) the defendants are interdicted by the provisions of Chapter 16311 to plead their defense.

The answer to these several contentions may be found in the provisions of Chapter 16311, Special Acts of 1933. It is not contended that the Legislature, under Section 8 of Article VIII of the Constitution, did not have the power to enact Chapter 16311, but that fatal variance occurred in procedure on the part of the Town of Atlantic Beach under the provisions of the Act in perfecting enforceable liens against the

abutting property owners. The lower court validated and confirmed the bond issue as authorized by the affected freeholders of the town and the lower court concluded that the facts appearing in the answers stricken by the order dated August 15, 1940, were legally insufficient to constitute a defense against the suit to foreclose the special assessment lien, in the absence of a showing in the answer of fraud or mistake. We have carefully reviewed the legal effect of the answers held insufficient in the lower court and fail to find error.

In Summerland, Inc., v. City of Punta Gorda, 101 Fla. 543, 134 So. 611, the property owners sought to cancel the special assessments by a bill in equity. A demurrer was sustained to the bill, and on appeal here this Court affirmed the order appealed from and in part said:

"The bill of complaint, not having alleged any fraud or bad faith on the part of the commissioners in making the assessments nor any reason why the remedy provided under the law was not open to appellant and exercised as provided, does not state facts entitling appellant to equitable relief. Abell v. Boynton, *supra;* Power v. Helena, *supra;* Robert Noble Estate v. Boise City, 19 Fed. and series, 927; Farncomb v. City and County of Denver, 252 U. S. 7, 64 L. Ed. 424, 40 Sup. Ct. 271."

The annotation in 9 A. L. R. 797 is to the effect that a landowner who stands by without objection until a public improvement is completed, is thereby estopped to object to the *manner* in which the work is done.

And McQuillin, Municipal Corporations (2nd Ed.) Vol. 5, Section 2263, states that:

"Among the many non-essential irregularities which

the courts generally agree should be put out of view, in adjudicating the merits of special assessment and taxation cases, are: . . . changing the materials, minor defects, errors and irregularities as to plans and specifications, and in the estimate of the cost of the improvement. . . ."

It is next contended that the alleged liens obtained by the construction of the seawall are void and unenforceable for reasons, viz.: (1) that the construction of the seawall failed to benefit or improve defendants' property; (2) the length of the seawall is 5,681.96 feet and within this distance there are thirteen streets consisting of a total of 514 feet, and that the construction of the seawall over the ends of the thirteen streets is an improvement in behalf of said town and does not benefit the property of the defendants; (3) defendants in the form of a counter claim seek payment for the value of the property taken from the defendants and used in the construction of the seawall; (4) that several items appearing in the amended answers were adjudicated by the decree of the circuit court in validating and confirming the bond issue under date of July 30, 1934; (5) the defendants below are guilty of laches and cannot assert as a defense to the foreclosure many items appearing in the answer and for said reason defendants are guilty of laches; (6) Chapter 16311, *supra,* does not authorize 12% interest and attorney's fees.

It is contended that no benefits accrued to the property of the defendants by the construction of the seawall. The power to determine whether or not the property of the defendants below assessed to pay the costs of the seawall was benefited by the improvement was vested under the provisions of Chapter 16311 in

the Town Council of Atlantic Beach. The town council exercised that power and there is nothing in the stricken answer to show fraud, mistake or other unlawful action on the part of the town council in following the provisions of Chapter 16311. While it is true that an unlawful abuse of the discretion conferred on legislative bodies can or may exist when exercising that power in prorating the costs of improvements on abutting property on the theory of accrued benefits, if an unlawful abuse of discretion is shown, it becomes the duty of the courts in the administration of the law to enter such orders or decrees as will prevent extortion or a confiscation of property. The benefits contemplated must be equally and proportionately spread against all properties required to pay the cost of the improvements.

In the case of Atlantic Coast Line R. Co. v. City of Winter Haven, 112 Fla. 807, (text pages 812-14, 151 So. 321), this Court said:

"The view usually taken on the subject as to what property is subject to special assessment for public improvements is the one from the standpoint of enhancement in the market or utility value of the real property affected. If specially assessed property is, or may be, enhanced in value by the improvement when made, it is subject to an assessment in proportion to the benefits it will likely receive from the execution of the work. And in determining probable benefits, the general enhancement in value of the locality as a whole in which the improvement is to be made, may be taken into consideration in making an apportionment of benefits to the individual properties situate therein. It is on the theory that a railway contiguous to a proposed street improvement has been, in

almost all the American jurisdictions, held subject to imposition of special benefit assessments for its proportion of the costs of constructing special street improvements, since it is recognized that a line of railroad serving a municipality whose population will likely be enlarged, and whose volume of business may be increased through such improvements, will necessarily receive an indirect benefit through enhancement in the value of its line in that locality, although the direct benefit to the immediate contiguous property itself may be comparatively small. Davis v. City of Clearwater, 104 Fla. 42, 139 Sou. Rep. 825; Atlantic Coast Line R. Co. v. City of Gainesville, 83 Fla. 275, 91 Sou. Rep. 118, 29 A. L. R. 668. See also note to Minneapolis, St. P. & S. Ste. M. R. Co., v. Minot, 37 A. L. R. 221; 25 R. C. L. 117; Northern Indiana R. Co. v. Connelly, 10 Ohio St. 159; Northern Pac. R. Co. v. City of Seattle, 46 Wash. 674, 91 Pac. Rep. 244, 12 L. R. A. (N. S.) 121; Chicago, M. & St. P. R. Co. v. City of Janesville, 137 Wis. 7, 118 N. W. Rep. 182, 28 L. R. A. (N. S.) 1124, and notes.

"It is for the Legislature and not the judiciary to determine whether the expense of a public improvement shall be borne by the whole community, or by the district or neighborhood immediately benefited. Raleigh v. Pearce, 110 N. C. 32, 14 S. E. Rep. 521; 17 L. R. A. 330; Bauman v. Ross, 167 U. S. 548, 17 Sup. Ct. Rep. 966; 42 L. Ed. 270. And the power to determine whether or not the property assessed to pay the cost of a local improvement is benefited by such improvement, is legislative, not judicial. Speer v. City of Athens, 85 Ga. 49, 11 S. E. Rep. 802, 9 L. R. A. 402; Sheley v. Detroit, 45 Mich. 431, 8 N. W. Rep. 52; Moody & Co., v. Sportorno, 112 La. 1008, 36 Sou.

Rep. 836; King v. City of Portland, 38 Ore. 402, 63 Pac. Rep. 2, 55 L. R. A. 812. And generally the determination of a city governing authority that abutting property on the line of a strict improvement, assessed by authority of statute in proportion to its front footage, has received special benefits equal to the assessments is conclusive against all collateral attacks. Pittsburg, C. C. & St. L. R. Co. v. Taber, 168 Ind. 419, 77 N. E. Rep. 741, 11 Am. & Eng. Ann. Cas. 808; Hammett v. Philadelphia, 65 Pa. St. 146, 3 Am. Rep. 615; Allen v. Galveston, 51 Texas 302; Daily v. Swope, 47 Miss. 367."

It is shown that the seawall is 5,681.96 feet in length and located within the corporate limits of the Town of Atlantic Beach and that there are thirteen streets having a total width of 514 feet ending at the seawall, and that the construction of the seawall over the ends of these thirteen streets at a total cost of $12,479.56, it is contended, fails to benefit the property of the defendant and the total cost thereof should not be charged proportionately against abutting property owners. The cases cited by counsel for petitioners are: Parrish v. Hillsborough County, 98 Fla. 430, 123 So. 830; Blake v. City of Tampa, 115 Fla. 348, 156 So. 97. In Parrish v. Hillsborough County, the constitutional validity of Chapter 12867, Special Acts of 1927, providing for the improvement of public roads of Hillsborough County partly within and partly without the corporate limits of any municipality, was involved, the entire costs of the improvement being by the terms of the Act assessed against the abutting property, and this Court, in part, said:

"Duly enacted statutes may authorize highway improvements by public authorities to be made entirely

at the expense of abutting property owners, where the improvements are primarily and essentially for the benefit of the abutting property and are only secondarily or incidentally beneficial to the public and then only when the expenses are reasonable and proper and the benefits accruing from the improvements of the abutting property are properly apportioned and will at least be equal to the assessment made against such property. If a highway improvement is primarily for the benefit of the public and only secondarily or incidentally beneficial to abutting property, the imposition of the entire expense of the improvement upon the owners of the abutting property would be a violation of organic property rights. . . ."

The entire cost of the construction of the public road in that case, by the terms of the Act, was assessed against the property owners. Here the cost of the construction of the seawall, under the provisions of Chapter 16311, is limited to 20% of the total cost by the Town of Atlantic Beach and this amount is raised by an ad valorem tax on all taxable property. Section 2 provides that special assessments shall be assessed against abutting property in proportion to the benefits derived therefrom and calculated on a front footage basis of the properties abutting the seawall.

In the case of Blake v. City of Tampa, *supra*, suit was filed to enforce the payment of a special assessment improvement lien against school property of District No. 4, of Hillsborough County. The amount claimed was $5,396.72 and suit was filed under the provisions of Chapter 15536, Special Acts of 1931, and this Court, in part, said (text pages 354-5 of 115 Fla.) :

"Taxes proper, or general taxes, whether for State,

county, municipal or school purposes, proceed upon the theory that the existence of a government is a necessity; that it cannot continue without means to pay its expenses; that for those means the State has the right to compel all citizens and property within its limits to contribute; and that for such contribution it renders no return or special benefit to any property, but only secures to the citizen that general benefit which results from protection to persons and property, and the promotion of those various schemes, such as roads, schools and the like, which have for their object the welfare or protection of all. On the other hand, special assessments, or special taxes, proceed upon the theory that when a local improvement enhances the value of neighboring property, that property should pay for the improvement in proportion to the benefit it receives therefrom. Illinois Cent. R. Co. v. Decatur, 147 U. S. 190 (text 197), 13 Sup. Ct. Rep. 293, 37 L. Ed. 132 (text 134); Fallbrook Irrigation Dist. v. Bradley, 164 U. S. 112, 17 Sup. Ct. Rep. 56, 41 L. Ed. 369.

"With respect to special assessments, it is recognized by the weight of authority in the United States that with the exception of property of the general government, such as may be used for a custom house, post office or other public building, all other public property is assessable if so provided by legislation, for it is unquestionably competent for the law-making power to authorize lands of the State, or public property belonging either to municipal corporations or to other public quasi corporations, or to political subdivisions, to be subjected to special assessments. But public property will not be deemed to be so included unless by special enactment or necessary implication.

See cases cited in Hamilton 'Law of Special Assessments,' par. 281 at page 233. This rule has been followed in Florida in Martin v. Dade Muck Land Co., 95 Fla. 530, 116 Sou. Rep. 449, wherein this Court upheld special assessments authorized by the Legislature to be imposed for drainage purposes on State-owned trust lands held in the Everglades Drainage District by the Trustees of the Internal Improvement Fund.

"The lien of a special assessment is an incumbrance on the property itself and the estate of the person in possession if of no consideration. Note: 10 Ann. Cas. 1913C, 1210. So while a lien for a special assessment may be placed against property as such, irrespective of its then ownership or possession, it is well settled that property in use for public or governmental purposes cannot be sold on execution or other legal process. This rule is applied to the sale of public property to pay local assessments for public improvements. And the rule has been applied in cases of an assessment against public property belonging to a county, and to public property used for school purposes. School Town of Windfall City v. City of Somerville, 181 Ind. 463, 104 N. E. Rep. 859, Ann. Cas. 1916D, 661; Comm'rs of Franklin County v. City of Ottawa, 49 Kan. 747, 31 Pac. Rep. 788, 33 A. S. R. 396; Note 15 Ann. Cas. 353."

The inherent right of a citizen or the general public to use and travel a street is generally acknowledged and this right is subject to the power of regulation and the right of taxation by the city. See Day v. St. Augustine, 104 Fla. 261, 139 So. 880.

Counsel for petitioner contend: (1) that the cost of the construction of the thirteen street ends over

the seawall so constructed by the town under the pro-
visions of Chapter 16311 at a cost of approximately
$12,479.56 (consisting of about 514½ feet) should be
paid by the Town of Atlantic Beach out of the 17%
authorized cost of the wall to be raised by ad valorem
tax levied against the taxable property of the town
under the provisions of the Act; or (2) the cost of
the street ends should be in the form of special assess-
ment liens against each of the thirteen streets; (3)
the assessment liens for the street ends in the sum
of $12,479.56 therof entered against the abutting prop-
erty owners to the said seawall is not authorized. The
resolution or ordinance adopted by the Town of At-
lantic Beach under the provisions of Chapter 16311,
authorizing and under the terms and provisions of
which the seawall was constructed and assessment
liens entered, is not attached as an exhibit to the bill
of complaint nor does it appear in the record. The
challenged answer of the petitioners contains a state-
ment of B. E. James, auditor, to the effect that the
costs of the thirteen street ends over the seawall
should be paid out of the 17% of the total cost of con-
struction to be raised by the town by an ad valorem
tax levy, and paragraph (k) of the amended answer
is viz.:

"(k) Defendants show that in and by said Chapter
16311 and in and by said resolution of July 26, 1933,
and in and by said ordinance of July 31, 1933, it was
provided that all property abutting upon the said
special improvement should be specially assessed for
83% of the cost of said improvement; that there is a
total of 514.6 feet of street ends of the Town of
Atlantic Beach abutting upon said seawall and im-
provement; that the 83% of the total cost of said

seawall improvement was prorated against only private property abutting on said improvement and no assessment was made against the Town on account of said streets abutting on said improvement."

Grounds 13 and 14 of respondent's motion to strike petitioners' answer are viz.:

"(13) Section 4 of said Chapter 16311, mandatorily required that in determining the proposed improvements, to-wit; the construction of said seawall, it was the Town Council's duty 'to include the cost of braces, reinforcements, piling, protection or construction of runways and protection of highways and streets leading onto the beach, interest on the bonds during the period of construction, advertisement, clerical work, books, records, engineers' fees, attorney's fees, and court costs.'

"(14) A special assessment sensibly can be made only against property, the owner of which is amenable to taxation; and there was and is no authority of law to levy a special assessment against property, to-wit, the street ends mentioned in sub-paragraph (k) of said paragraph 6, owned by the Town of Atlantic Beach in its sovereign governmental capacity."

It was contended the sum of $12,479.56, being the calculated cost of the construction of 514½ feet of the thirteen street ends as estimated by petitioner's auditor, should not have been apportioned among the abutting property owners to the seawall, but should have been paid by the town out of the 17% of the cost of the wall to be raised by ad valorem tax against all the property of the town, or if declining so to do, the $12,479.56 should have been by the town charged against the property abutting the street or streets on the theory that the owner of abutting property on a

street owns the fee simple title to the center of said street. The following cases are cited: Smith v. Horn, 70 Fla. 484, 70 So. 435; Rawls v. Tallahassee Hotel Co., 43 Fla. 288, 31 So. 237; Burns v. McDaniel, 104 Fla. 526; 140 So. 314; Florida So. Ry. Co. v. Brown, 23 Fla. 104, 1 So. 512; S. H. Kress & Co. v. Miami, 78 Fla. 101, 82 So. 775; Seaboard Air Line Ry. Co. v. Southern Inv. Co., 53 Fla. 832, 44 So. 351. These cases have been examined and each fully approved.

The answer of counsel for the respondent to the several contentions *supra,* is that these several street ends on the seawall are public property and the Town of Atlantic Beach is without statutory authority to make and enter special improvement liens on the several streets thereof on the theory that the streets are public property. While it concedes that Section 4 of Chapter 16311 requires that the Council of Atlantic Beach shall include in estimating the costs of the construction of the seawall, braces, reinforcements, piling and other improvements of the highways and streets leading on the beach, the Act fails to contain a provision that special improvement liens shall be entered against the abutting property owners of said streets for the cost of the construction of the seawall where the highway and streets lead onto the beach. The special assessment liens are limited by the terms of the Act to the benefits derived by the construction of the seawall to the respective *properties benefited* and prorated according to the *frontages* of the respective *properties to the seawall.* It is difficult, in determining the intention of the Legislature, to read into the Act the contention of counsel for petitioners that The Town of Atlantic Beach has the power to enter these special improvement liens against the owners of prop-

.erty abutting each of the streets on the theory that the owner of property abutting the streets owns the title thereof, to the center of the street.

Section 3 of the Act authorizes the council of the Town of Atlantic Beach to prepare plans, specifications and estimate costs of the improvement and by resolution or ordinance designate the portion of the shore line to be protected by seawall, and to determine the proportionate part of the expense to be paid by abutting property owners, and when so declared by the town council the same are made special assessment liens against the property so improved in a total amount of not less than 80% of all costs of the improvement. The owners of property abutting the seawall are required to pay not less than 80% of the total cost thereof and the amount each owner shall pay is to be determined by benefits derived by the improvement and a lien given by law in amount or amounts prorated according to the footage of the respective properties to the seawall. The language employed by the Act limits the liens to the real property abutting the seawall and no other, is suggested or inferred by the terms of the Act. If the Legislature intended other property to pay or carry the burden in whole or in part of the construction of the seawall, it failed to designate the same. We are bound by the plain language of the Act. See Morris v. Gainesville, 60 Fla. 338, 53 So. 739; Blake v. City of Tampa, *supra;* Dial v. City of Sanford, 104 Fla. 1, 142 So. 233; 44 C. J. 525, 626; 61 C. J. 359; McQuillen on Municipal Corporations, Vol 5 (2nd Ed.) par. 2258.

It is next contended that the 12% interest per annum on past due installments as provided for in Section 9 of the Act, and a reasonable attorney's fee as pro-

vided for in Section 10 are each beyond the scope of the title of the Act and are therefore void as being violative of Section 16 of Article 3 of the Constitution of Florida. The title of the Act is viz.:

"AN ACT Relating to the Town of Atlantic Beach, in Duval County, Florida, providing for the Construction of Seawalls, authorizing the Issuance of Bonds for Special Assessments against Abutting Property to Pay a Portion of the Cost of Seawalls, or the Bonds issued for That Purpose, and Other Matters in Connection Therewith or Relating Thereto."

Section 10 of the Act provides for the filing of such legal proceedings in any court as may be necessary to enforce the payment of any installment, with accrued interest thereon, at a rate or rates named prior and subsequent to the maturity thereof, and the language of the title, viz.: "and Other Matters in Connection Therewith or Relating Thereto" clearly authorizes such proceedings. We are unable to find in the title of the Act language sufficient to entitle the recovery of reasonable attorney's fees referred to in Section 10. See Webb v. Scott, 129 Fla. 111, 176 So. 442; Turner v. City of Daytona Beach, 128 Fla. 902, 175 So. 897; Parker v. Town of Callahan, 115 Fla. 266, 156 So. 334; Prairie Phosphate Co. v. Silverman, 80 Fla. 541, 86 So. 508; Carr v. Thomas, 18 Fla. 736; Savannah, F. & W. Ry. Co. v. Geiger, 21 Fla. 669; State ex rel. Gonzales v. Palmes, 23 Fla. 260, 3 So. 171; State ex rel. Attorney General v. Burns, 38 Fla. 367, 21 So. 290; Wade v. Atlantic Lbr. Co., 51 Fla. 628, 41 So. 72; Ex Parte Knight, 52 Fla. 144, 41 So. 786; Peters v. Gilchrist, 222 U. S. 483, 32 Sup. Ct. 122.

That part of the order denying the motion to strike the claim for attorney's fees was erroneous, other-

wise the record is free from error. The petition for a writ of certiorari is hereby granted as to that portion of the order granting plaintiff below attorney's fees and that portion thereof is hereby quashed; in all other respects the said petition is denied.

It is so ordered.

WHITFIELD, TERRELL, BUFORD, THOMAS and ADAMS, J. J., concur.

BROWN, C. J., dissents.