55 So.2d 909 (1952)
ROSCHE et al.
v.
CITY OF HOLLYWOOD.
Supreme Court of Florida, Special Division A.
January 4, 1952.
Rehearing Denied January 21, 1952.
*910 Leonard Robbins and Robbins & Cannova, all of Hollywood, for appellants.
Sherwood Spencer and Ellis & Spencer, all of Hollywood, for appellee.
CHAPMAN, Justice.
The City of Hollywood on August 19, 1947, pursuant to Chapter 12877, Special Acts of 1927, being the Charter of said City, adopted Resolutions Nos. 1254 and 1255. These resolutions authorized the improvement of Tyler and Harrison Streets of the City of Hollywood by resurfacing each thereof with asphalt and asphalt finish of prescribed weight per square yard. The improvement specifications and costs and incidental expenses were to be estimated by the City Engineer and ultimately be assessed against the abutting property upon the two streets specially benefitted by the improvement. Tyler and Harrison Streets run east and west some eleven or twelve blocks but are separated by Hollywood Boulevard. The streets are heavily travelled by the public and maintenance of the then existing pavements approximated some $7,500 per month. Heavy rains and standing water about the streets were contributing factors to their giving way. The area is low, marshy land having but little water fall.
It appears that the total costs of repaving Tyler Street a distance of some ten blocks came to the sum of $29,269.39, while the *911 costs of repaving ten blocks on Harrison Street came to the sum of $30,998.56. These costs were assessed by the City of Hollywood against the abutting property owners on the aforesaid streets on a front foot basis. The abutting property owners on Harrison Street have paid the amount of the assessments in the sum of $30,998.56, except the sum of $1,719.66. The abutting property owners on Tyler Street have paid the amount of the assessments in the sum of $29,269.39, except the sum of $2,621.48. A class suit consisting of those who had paid their street lien assessments and those who had not paid them filed suit in the Circuit Court of Broward County, Florida, against the City of Hollywood to obtain a decree invalidating the paving liens and requiring the City of Hollywood to refund the sum of $56,000 previously paid to it by the abutting property owners on Tyler and Harrison Streets. On final hearing a decree was entered in behalf of the City of Hollywood and the original plaintiffs appealed. The following portions of the able and well considered opinion of the Chancellor below, Honorable George W. Tedder, may be adopted as the opinion of this Court:
"This suit is brought against the City of Hollywood, Florida, by fifty-four (54) plaintiffs to cancel special assessments put on lands abutting on Harrison and Tyler Streets in said city for paving done on such streets from 7th to 17th Avenues. They prayed that a decree be entered declaring such assessments unconstitutional and void; that the city be enjoined from the collection of the assessments not paid, and that the city be required to refund payments already made thereon. The bill of complaint alleges that the assessments are void for the reason that the lands abutting on said streets have received no benefits from the local improvement; that said improvements have resulted in a detriment to said land, in that the drainage on these streets has been impaired and retarded, which has caused the water to overflow and flood the abutting lands; and that said lands are less valuable, because of the increased traffic on said streets, which have become main thoroughfares for traffic to and from the beach; that the hazards and noise from the increased traffic and speeding cars has made these lands less desirable as a quiet residential section.
"It was also alleged that the said streets are used largely by the public; that the improvements were made for the benefit of the general public, in order to allow a larger volume of traffic to pass over said streets; that from a quiet residential section, the streets have been turned into speedways with increased traffic; that plaintiffs' land received no benefit from the improvements, but the benefits inured primarily to the general public.
"The defendant city denied the material allegations of the bill alleging no benefits and detriment to the abutting lands. The Special Master was appointed to take the testimony and submit his findings of fact and law. In his report he summarized the pleadings and the evidence submitted and found that the lands abutting on said streets derived no benefits from the repaving of said streets; that the property abutting the streets in question has not been enhanced in value as a result of the improvements; that the raising of the general level of the streets by the resurfacing caused the water to overflow the curbing and flood a few lots which had not been flooded prior to the repaving, and that there has been some increase in traffic. The Special Master further recommended that a decree declaring the assessments void. The city filed exceptions to the Special Master's report.
"There are many facts in this case, which may be deemed as undisputed. Harrison and Tyler Streets parallel Hollywood Boulevard, which boulevard is the only main thoroughfare to the beach. It is 120 ft. wide, 100 ft. being paved with a 10 foot parkway between the pavement and property line. Harrison and Tyler Streets are 70 ft. wide, 50 ft. being paved with a 10 foot parkway similar to the boulevard. The two streets in question end on the east at 7th Avenue, which is a 50 foot street bordering on and immediately adjacent to the East Coast Canal. The only bridge in the city crossing the East Coast Canal is at the eastern end of the boulevard. This entire section is zoned strictly for residences, *912 but there are several nonresidential structures on Harrison and Tyler Streets, seven (7) apartments and one (1) hotel on Tyler Street; three (3) apartments, one (1) large rooming house and one (1) church on Harrison Street. This area is known as the `Lake Section' and is among the finest residential sections of the city.
"In its original state the land lying east of the middle of the blocks between 14th and 15th avenues was a low mangrove swamp. The developer conceived the idea of dredging out the two lakes known as `North Lake' and `South Lake' and pumping the muck, marl and rock onto the remaining portions of the tract. These `made' lands are level and quite low, the water table being near the surface, with a very gentle slope to the east. The first pavement was laid on this muck, marl and rock, which is known to be an unstable foundation for a street or highway, and the streets with the traffic passing over them became quite rough, with rather deep depressions which held water after rains for days. The surface of the pavement also became broken and the traffic made holes in the pavement of varying size and depth. This was the condition of the two streets involved when the streets were repaved. Though they could be used, travel was slow and unsatisfactory.
"The first and most important question here is that of benefits. As is usual, in cases of this character, the evidence is somewhat conflicting on this point. The testimony for the plaintiffs is at most indefinite and sketchy, and largely conclusions of the witness as to benefits. The evidence also as to detriment is very inconclusive. While some of the witnesses testified that a few of the lots were flooded with water after hurricanes, or heavy rainstorms, there is other evidence to the effect that this condition of flooding existed prior to the repaving. The entire area is low and the slope to the east is so slight that it is but natural that the water would drain off slowly. It is a matter of common knowledge also that a smooth, even street will drain more rapidly than one filled with ridges, depressions and holes. It is true that some of the pictures of the streets show the streets and abutting properties with water on them, but other pictures depict the same scenes as dry and beautiful residential streets.
"These are other facts which should be considered in connection with this case. Some fourteen (14) new residences have been constructed during the period of less than two years between the date of the completion of the repavement and the date of the filing of this suit, and approximately one hundred fifty (150) residences have been constructed in this area in the same period of time. Other residences are now under process of construction. Of the assessments on the more than five hundred lots abutting on these streets, all have been paid, except on twenty-nine (29) lots and a portion of four others. Only one witness testified that he paid his assessment under protest. There are five (5) plaintiffs whose names do not appear on the list, filed by stipulation herein, of the owners, the lots assessed, the assessments made and the payments on the assessments. Only five (5) of the remaining forty-nine (49) plaintiffs have not paid their assessments.
"The testimony as to the increased traffic and speeding is also more or less indefinite and uncertain. No facts were given as to this, the evidence being largely conclusions of the witness. The only concrete evidence as to traffic were the records made by the police after the filing of this suit. There is nothing to show that there has been more than a normal increase in traffic, especially considering the new buildings constructed, with trucks delivering material and the workers going to and from these buildings in cars. The census, of which the Court takes judicial knowledge, discloses that the population of Hollywood has increased almost one hundred per cent between 1945 and 1950. This increase in population would naturally result in increased travel over these streets. While the two streets in question are thoroughfares in a limited sense, they can be termed only as secondary thoroughfares, the main thoroughfare being Hollywood Boulevard.
*913 "In considering the question of benefits and the right of the property owner to have the same declared void and a decree entered cancelling the same, there are two principles of law controlling in such cases: (1) Where there are no benefits accruing to the abutting lands by reason of the local improvement, the special assessments are void and may be cancelled in a proper proceeding. (2) Where the city, under the provisions of its charter, has authority to pave and assess the costs of such paving to the abutting lands receiving benefits therefrom, and ordinances are duly passed providing for such paving, which ordinances include a finding of benefits to the abutting lands, and the cost thereof is assessed to the property owners, such findings are generally held to be conclusive and final. There is a presumption that such findings as to benefits are correct and this presumption can be overcome only by strong, direct, clear and positive proof. Generally, all presumptions are in favor of the validity of assessments for local improvements, and the burden of proof is on persons attacking the validity of assessments to show that they are invalid. In accordance with this general rule the burden of proof is on the persons attacking the validity of such assessments to show that the property was not benefited. The apportionment of assessments is a legislative function and if reasonable men may differ as to whether land assessed was benefited by the local improvement the determination as to such benefits of the city officials must be sustained. If the evidence as to benefits is conflicting and depends upon the judgment of witnesses, the findings of the City Commission will not be disturbed. The evidence to overthrow the presumption that the abutting property was benefited by the repaving of the streets must be clear, cogent and conclusive. It is my opinion that this presumption has not been overcome by the evidence in this case.
"The plaintiffs by their bill of complaint practically admit that their properties derived some benefit from the paving as shown in paragraphs 12 and 20, in which they allege that the liability of plaintiffs, if any, is only for that portion of the street lying in front of their lands and not for the repaving of the intersections.
"In addition to this, the plaintiff, Rosche, testified in response to a question as to whether or not, in his opinion, the paving needed to be done, `Well, I think it should have had  put a new surface on it.'
"After considering the applicable law as to the presumption of benefits and the evidence in this cause, the only conclusion I can reach is that the lands involved did receive benefits from the paving of the two streets and, therefore, a decree should be entered dismissing the bill of complaint.
"The defendant city also contends that plaintiffs are estopped to maintain this action for the cancellation of the special assessments for the improvements on these streets. This point, in my opinion, is well taken. Plaintiffs had direct notice of the ordinances providing for street improvements; they saw the pavement being put down and were well aware that part, or all of the cost thereof, would have probably been assessed against their properties. They stood idly by when they could have filed their protests with the City Commission, or could have resorted to a Court of Equity to restrain the paving of the streets, and the levying of the assessments thereon. They remained silent for two years after the City became liable for the cost of the paving of the streets and did nothing. Having failed to avail themselves of any of the remedies provided for their protection under the laws of Florida, and not having shown fraud or bad faith on the part of the City Commissioners in making the assessments, they should now be held to be estopped to do so. It, therefore, follows that the exceptions to the Special Master's report should be sustained and the bill of complaint dismissed."
See Atlantic Coast Line R. Co. v. City of Gainesville, 83 Fla. 275, 91 So. 118, 29 A.L.R. 668; Summerland, Inc., v. City of Punta Gorda, 101 Fla. 543, 134 So. 611; Davis v. City of Clearwater, 104 Fla. 42, 139 So. 825; Escott v. City of Miami, 107 Fla. 273, 144 So. 397; Tampa Dock Co. *914 v. Hanchett Bond Co., 105 Fla. 470, 141 So. 526; City of New Smyrna v. Mathewson, 113 Fla. 861, 152 So. 706; Atlantic Coast Line R. Co. v. City of Winter Haven, 114 Fla. XXV, 151 So. 321; Webb v. Scott, 129 Fla. 111, 176 So. 442; Evans v. Hillsborough County, 135 Fla. 471, 186 So. 193; Ocean Beach Hotel Co. v. Town of Atlantic Beach, 147 Fla. 445, 2 So.2d 879; Rafkin v. City of Miami Beach, Fla., 38 So.2d 836; City of Tallahassee v. Baker, Fla., 53 So.2d 875.
The decree of the lower Court is affirmed.
SEBRING, C.J., and THOMAS and HOBSON, JJ., concur.