DREW, Justice.
The answer to the question of whether the city had the power to repair the streets in the manner described in the opinion by Mr. Justice Thomas and to assess a portion of the cost thereof against the abutting property owners is found in the clear and unequivocal language of Section 56 of the city charter.[1] This legislative act provides “A Local Improvement is an improvement defined by this section and made under the provisions hereof.” It *118 further describes the classes of improvements “authorized to be made under the provisions of this Act.” There are five classes of improvements so designated but for the purpose of this discussion, we need concern ourselves directly only with class one. The following is the exact language of the city charter describing an authorized improvement under the act for which special assessments for benefits may be made.
“Class 1. Highway improvements embrace the grading, paving, repaving, macadamizing and re-macadamising of highways, with necessary drainage, sewer inlets, manhole and catch basins, and, if the Commission so orders, may embrace curbs and gutters.” (Emphasis supplied.)
There are many significant words in this quotation. The first word is “improvement”. This clearly symbolizes making better something which already exists. Webster, among other things, defines “improvement” as “betterment” and “state of being improved”. The language of the act provides not merely for grading, paving and macadamizing a street but also uses the words “re-paving” and “re-macadamizing”. This is a clear legislative grant of power to do exactly what was done in the instant case. It is difficult to understand what words the Legislature could have used which would more clearly have vested the power in the city to do the work covered by the resolution and make assessments therefor against the abutting property. The words “macadamizing” and “re-macadamizing” embrace the identical subject as “surfacing” or “re-surfacing”. “Macadamizing” a road merely contemplates or embraces a layer or surface over the rock, stone or cement which constitutes the road itself. “Macadamizing” is sometimes referred to as “slag” but may be any substance covering the top or surface of the road put there for smoothness or safety. Webster’s Collegiate Dictionary Fifth Edition, describes “macadamize” as “to construct or finish a road by packing a layer of small broken stone on a convex well-drained earth roadbed.” “Macadam”, according to the foregoing authority, is the “broken stone used in macadamizing.” In 54 C.J.S: p. 890, “macadamize” is described as follows: “While it has been observed that the meaning of the word ‘macadamize’ is susceptible of variation, according to the particular relation in which it is employed, it is said to have a fixed and'definite meaning. It has been defined as meaning to cover a road or path with small broken stones, which uniting by pressure form a smooth hard surface; to cover, as a road, way, or path, with small stones, so as to form a smooth laid surface; to cover as a roadway surface; to cover a street or road by the process introduced by MacAdam, which consists of the use of small stones, of a uniform size, consolidated and leveled by heavy rollers. The term may refer not only to the kind of material to be used in covering a street or road, but also the manner in which it is to be laid.” Moreover the words used in the quoted section of the city charter “pave and re-pave” are of significance to this discussion. In essence these words mean to produce or re-produce smooth surface so that “re-pave” and “re-surface” would be indistinguishable within the intent and clear language of the act. See 76 C.J.S., p. 1175, especially text to note 30 and 54 C.J. 401. McDonald v. Fraleigh, 1923, 86 Fla. 577, 98 So. 830. It may not appeal to some to allow a city to assess for the cost of re-paving or re-surfacing a street but it is unquestionably within the power of the Legislature to authorize such to be done. We reiterate that such power could hardly have been vested in language of clearer import and meaning than that contained in the city charter.
Holding then, as we unanimously do, that the notice discussed in the opinion by Mr. Justice Thomas was in all respects regular and in full compliance with the provision of the city charter relating to special assessments for benefits, we now direct our attention to the requirements placed by the law *119 upon the property owner if he desires to contest the regularity of the proceedings, the power of the city to make the assessments or the amount of the assessments determined to be chargeable against the respective parcels of land.[2]
This is not the first time this section 56 of the city charter has been before this Court; nor is it the first time we have had occasion to deal with the duty and responsibility of the property owner to promptly object to the city commission if he has a grievance with reference to a proposed improvement. In Escott v. City of Miami, 1932, 107 Fla. 273, 144 So. 397, 399, in speaking of this identical section of the city charter, after holding the original notice to have been validly given, we said:
“If the property owner had notice, and in this case we have held that he did have, his only method of questioning any error or irregularity in the proceedings was by filing objections before the city commission, and, if overruled there, by filing his special appeal to the circuit court, in the manner provided by the charter.
“Where a property owner has an opportunity given him, under a statute providing for special assessments for local improvements, to appear and contest the question before the local authorities whose duty it is to pass upon objections, their determination on the subject of benefits is final, and, if he fails to avail himself of the opportunity Provided by the statute, he thereby admits the finality of the determination, and is estopped to raise the question in subsequent proceedings such as by suit in equity to enjoin the enforcement of assessments which have become conclusive under the statute" (Emphasis supplied.)
See also Rosche v. City of Hollywood, Fla. 1952, 55 So.2d 909, and Summerland, Inc., v. City of Punta Gorda, 1931, 101 Fla. 543, 134 So. 611.
 Section 56 of the charter of the City of Miami provides, in detail, the steps to be taken by the city officials in authorizing public improvements, the cost of which are to be paid in whole or in part by the owners of the land abutting said improvements and especially benefited thereby. The various notices required to be published are for the purpose of advising the property owners affected of the nature and extent of the improvements, the extent of the assessments to be made against the land to be especially benefited thereby and the details of such construction so that the affected property owners may be fully advised as to what is contemplated, the approximate cost of the improvement and the approximate amount to be ultimately assessed against the affected property. These requirements of the charter serve not only to protect the property owner by giving him notice of contemplated improvements so that he may take timely action either before the city commission or in the courts to protect his interest in the matter but it serves also to afford the municipal government the oppor *120 tunity of financing such improvements and a means of setting in repose questions of the validity of such proceedings and the assessments to be made pursuant thereto. Such proceedings serve much the same purpose as validation proceedings under Chapter 75, F.S.A. Both are necessary to the efficient and orderly financing of civic improvements and are a necessary adjunct of fiscal management. It would be disastrous to the fiscal affairs of the city and detrimental to the general welfare of its citizens if the validity of such assessments was constantly open to question. The orderly administration of the affairs of the city require that the property owner make timely objection and it imposes no undue burden on him to do so. We specifically pointed out in Sum-merland, Inc., v. City of Punta Gorda, supra, that a property owner who stands by and permits a public improvement to be made to the benefit of his property under authority of a tribunal vested with the power to levy such assessment may be estopped from raising objections thereto by sleeping on his rights and not promptly asserting them even thoúgh, had they been timely raised, such objections might have rendered the assessment invalid. The failure of the property owners here to promptly assert whatever rights they had or make any effort to comply with the applicable provisions of the city charter now estops them from questioning the validity or amount of these assessments.
I am authorized to say that Mr. Justice HOBSON, Mr. Justice THORNAL and Mr. Justice O’CONNELL concur in these views.
The judgment appealed from is reversed with directions to dismiss the complaint.
HOBSON, THORNAL and O’CON-NELL, JJ., concur.
TERRELL, C. J., and THOMAS and ROBERTS, JJ., dissent.

. Ch. 10847, Special Acts of 1925.

. The resolution authorizing the work and establishing the highway improvement tax district was adopted November 19, 1952. This suit in equity was commenced April 1, 1954.
The resolution was approved by the City Commission after a hearing on December 3, 1952, at which no objections were offered.
Bids wore advertised for, contracts awarded and the improvements completed. The Clerk published notice prior to a hearing on June 3, 1953, where no objections were made to the improvements, and they were then accepted.
After a preliminary tax roll liad been prepared, the clerk published notice of a hearing on February 3, 1954, for objections to confirmation of the roll. At the hearing, where there were no objections, the City Commission confirmed the assessments, finding: “That the sums and amounts assessed against each of the lots or parcels of ground in said preliminary rolls are less than the amount that each of the said lots or parcels of ground is especially benefited by said improvement and that such amounts are in proportion to the special benefits that the property received * *