CHARLES F. BLAKE, H. DORSEY MCMICHAEL and PHILIP ROBIN, as and constituting the Trustees of Consolidated Special Tax School District No. 4, Hillsborough County, v. CITY OF TAMPA.

156 So. 97.

Division A.

Opinion Filed April 27, 1934.

Petition for Rehearing Denied June 21, 1934.

*Himes & Himes,* for Appellants;

*Alonzo B. McMullen* and *Miles H. Draper,* for Appellee.

DAVIS, C. J.—The City of Tampa, a municipal corpora-tion, filed its amended bill against Charles' F. Blake, H. Dorsey McMichael and Philip Robin, as and constituting the Trustees of Consolidated Special Tax School District

No. 4 of Hillsborough County, the object of the suit being to enforce, by foreclosure and sale of the affected premises, a special assessment improvement lien, imposed by the City of Tampa, Florida, on certain school property as the school district's proportionate part of the cost incurred by the city for the making of a street improvement abutting the school premises.

A motion to dismiss the amended bill of complaint, which the Chancellor denied, gave rise to this appeal whereon is presented to us for determination, the following question of law: "Is property acquired and used for public school purposes, owned by a special tax school district under the constitution and laws of Florida, subject to be decreed in equity to be sold to pay a special assessment entered by a municipal corporation against said school property to pay what has been determined by the municipal authorities pursuant to statute to be the school district's proportionate part of the cost of grading, paving and curbing an abutting street, it appearing that special statutory authority has been conferrred upon the municipality to order street improvements and to impose on abutting properties special assessments in proportion to benefits to pay the cost thereof?"

From the allegations of the amended bill it appears that in substantial accordance with the precedural requirements of Tampa Local Improvement Act (Chapter 11232, Special Acts 1925), a final assessment was made on May 3, 1927, by the City of Tampa, against certain premises owned by Consolidated Special Tax School District No. 4, upon which premises was situated a county high school used for county and special tax school district purposes.

The assessment, in the original amount of $8,095.07, represented the cost of grading, paving and curbing an abutting street known as Central Avenue. That assessment, under

the provisions of Chapter 15536, Acts of 1931, Laws of Florida, was reduced to the principal sum of $5,396.72, the difference being absorbed by the City of Tampa. The special assessment of May 3, 1927, as so reduced by the Act of 1931, was by the 1931 Act undertaken to be confirmed, validated and made incontestable under a general validating provision of the statute.

Default having been duly alleged in the paying of installments of the assessment made against the school properties, the amended bill asserted the right of the city to enforce under Chapter 11232, Special Acts of 1925, an amended and reduced lien in its favor. Foreclosure of the lien and sale of the premises under decree of the court for the amount due the City of Tampa for principal, interest and attorney's fees, was prayed.

Appellants' motion to dismiss asserted in substance that the bill was without equity. But as special grounds for that assertion it also set up that the bill was an attempt on the part of the city, through the instrumentality of the court, to divert public school property to uses not permitted, in violation of Sections 10, 11 and 13 of Article XII of the Constitution of Florida; that Chapter 11232, Acts of 1925, insofar as it applied to school property, violated Sections 10, 11 and 13 of said constitutional Article XII, and that Chapter 15536, Acts of 1931, was violative of the enumerated sections of the Florida constitution insofar as it undertook to validate or legalize, in whole or in part, or in any amount, the alleged special assessment specified in the complainant's amended bill of complaint.

In addition to the usual and ordinary provisions which are customarily incorporated into a municipal special improvement statute of the character of the Tampa Local

Improvement Act, Chapter 11232, *supra,* contained a particular section which reads as follows:

"Sec. 32. Hillsborough County, and any school district or other political subdivision wholly or partly within said City, shall possess the same power and be subject to the same duties and liabilities in respect of said assessments affecting its real estate that private owners' of real estate possess, or are subject to hereunder, and such real estate of said county, school districts and political subdivisions shall be subject to liens for said assessments in all cases' where the same property would be subject had it at the time the lien attached been owned by a private owner."

Section 18 of the same Chapter reads as follows:

"Sec. 18. The said assessments shall constitute a lien upon the property so assessed from the date of the passage of the resolution ordering the improvement, of the same nature and to the same extent as the lien for general city taxes, and shall be collectible in the same manner and with the same attorney's fee, interest and penalties after default in payment and under the same provisions as to sale and forfeiture as city taxes are collectible. Collection of such assessments, with such interest and penalties and with a reasonable attorney's fee, may also be made by the city by proceedings in a court of equity to foreclose the lien of assessments as a lien for mortgages is or may be foreclosed under the laws of the State, and it shall be lawful to join in any bill for foreclosure any one or more lots or parcels of land, by whomsoever owned, if assessed for an improvement ordered by the same resolution; provided that failure to pay any installment of principal or interest of any assessment when such installment shall become due shall without notice or other proceedings, cause all installments of principal remaining unpaid to be forthwith due and pay-

able, with interest due thereon at the date of default and further interest as herein provided."

It appears from the provisions of Chapter 15536, *supra*, that under the Tampa Local Improvement Act, the entire cost had in the first instance been assessed against the property deemed to be benefited, including the school property here involved. By its 1931 Act the Legislature reassessed the benefits by authorizing the City of Tampa to reduce to the extent of one-third the principal amount of such assessments and to extend the time for the payment of all such assessments as so reduced into twenty equal annual installments. Section 8 of said Chapter 15536, *supra*, provided that all the assessments theretofore made to the extent of sixty-six and two-thirds per cent. thereof should be and the same were thereby validated and legalized, and declared valid, binding and incontestible.

In Article XII of the Constitution of the State of Florida, by Section 1, it is provided:

"The Legislature shall provide for a uniform system of public free schools and shall provide for the liberal maintenance of the same."

By Section 13 it is provided:

"No law shall be enacted authorizing the diversion * * * of any county or district school funds or the appropriation of any part of the permanent or available school fund to any other than school purposes."

By Section 9 it is provided that the county school fund shall be disbursed "solely for the support and maintenance of the public free schools."

The only funds of the special tax school districts are those derived from the sale of bonds issued under the provisions of Section 17, and the maintenance tax levied under Section 10, "for the exclusive use of public free schools

within the district," which, under Section 11, may be expended only in the district where levied "for building or repairing school houses, for the purchase of school libraries and text-books, for salaries of teachers, or for other educational purposes."

Taxes proper, or general taxes, whether for state, county, municipal or school purposes, proceed upon the theory that the existence of the government is a necessity; that it cannot continue without means to pay its expenses; that for those means the state has the right to compel all citizens and property within its limits to contribute; and that for such contribution it renders no return or special benefit to any property, but only secures to the citizen that general benefit which results from protection to persons and property, and the promotion of those various schemes, such as roads, schools and the like, which have for their object the welfare or protection of all. On the other hand, special assessments, or special taxes, proceed upon the theory that when a local improvement enhances the value of neighboring property, that property should pay for the improvement in proportion to the benefit it receives therefrom. Illinois Cent. R. Co. v. Decatur, 147 U. S. 190 (text 197), 13 Sup. Ct. Rep. 293, 37 L. Ed. 132 (text 134); Fallbrook Irrigation Dist. v. Bradley, 164 U. S. 112, 17 Sup. Ct. Rep. 56, 41 L. Ed. 369.

With respect to special assessments, it is recognized by the weight of authority in the United States that with the exception of property of the general government, such as may be used for a custom house, post office or other public building, all other public property is assessable if so provided by legislation, for it is unquestionably competent for the law-making power to authorize lands of the state, or public property belonging either to municipal corporations

or to other public quasi corporations, or to political subdivisions, to be subjected to special assessments. But public property will not be deemed to be so included unless by special enactment or necessary implication. See cases cited in Hamilton "Law of Special Assessments," par. 281 at page 233. This rule has been followed in Florida in Martin v. Dade Muck Land Co., 95 Fla. 530, 116 Sou. Rep. 449, wherein this Court upheld special assessments authorized by the Legislature to be imposed for drainage purposes on state-owned trust lands held in the Everglades Drainage District by the Trustees of the Internal Improvement Fund.

The lien of a special assessment is an incumbrance on the property itself and the estate of the person in possession is of no consideration. Note: 10 Ann. Cas. 1913C, 1210. So while a lien for a special assessment may be placed against property as such, irrespective of its then ownership or possession, it is well settled that property in use for public or governmental purposes cannot be sold on execution or other legal process. This rule is applied to the sale of public property to pay local assessments for public improvements. And the rule has been applied in cases of an assessment against public property belonging to a county, and to public property used for school purposes. School Town of Windfall City v. City of Somerville, 181 Ind, 463, 104 N. E. Rep. 859, Ann. Cas. 1916D, 661; Comm'rs. of Franklin County v. City of Ottawa, 49 Kan. 747, 31 Pac. Rep. 788, 33 A. S. R. 396; Note 15 Ann. Cas. 353.

In cases where a valid special or local assessment against state, county, school or other publicly held and used property has been imposed in consideration of an authorized local improvement, for an amount proportioned according to benefits, the amount of the installments should be paid out of the treasury of the owning and holding public agency

or other public authority whose duty it is to have charge of, care for, keep up or maintain the property in use for public purposes and mandamus will ordinarily lie to compel such payment.

Property of a school board, or of trustees of a special tax school district, is property held by the board or district trustees, for the use of the state, to carry on the state's constitutional system of public schools, established in accordance with the requirements of the constitution, and as such trust property it is not subject to execution, levy or decretal sale or foreclosure, to satisfy a lien for street improvements. To this extent only do we follow the reasoning of the Kentucky courts in the cases cited to us by appellant. City of Louisville v. Leatherman, 99 Ky. 213; 35 S. W. Rep. 625; Wilson v. Board of Education of City of Russellville, 226 Ky. 476, 11 S. W. Rep. (2nd) 143; City of Mt. Sterling v. Montgomery County, 152 Ky. 637, 153 S. W. Rep. 952.

But inasmuch as the theory of all special assessments that our constitution authorizes to be imposed in consideration of benefits, is that the burden of the cost of a local improvement will be apportioned according to the resulting benefits to *property* and strictly in proportion thereto, which means that *all* benefited property must have had assessed against it its own proportionate share of the burden, regardless of whether it is publicly or privately held, and irrespective of its being put to a governmental as distinguished from an individual use, we accept the general rule that it is competent for the legislature, by a sufficient enactment for that purpose, to impose upon abutting school property, as well as upon other abutting property adjudged to be specially benefited, a lien, encumbrance or charge for its proportionate share of the cost of the improvement made, duly proportioned according to benefits. This is in accord with

the weight of authority, harmonizes with our own previous rulings on the general subject of special assessments, and is supported by the following array of well considered cases: In re: Howard Avenue North in City of Seattle, 44 Wash. 62, 86 Pac. Rep. 1117, 120 Am. St. Rep. 973; Jackson v. Board of Education, 115 Ohio St. Rep. 368, 154 N. E. Rep. 247; Dinn v. Board of Education, 202 N. Y. Supp. 62, 121 Misc. Rep. 633; City of Kalispell v. School District No. 5 of Flathead County, 45 Mont. 221, 122 Pac. Rep. 742.

We hold therefore as follows: that notwithstanding the provision of the several sections of Article XII of the Constitution of Florida relating to schools and the public school funds, that property acquired and used for public school purposes, owned within the jurisdiction of a municipality by a special tax school district under the constitution and laws of Florida, may, by a duly enacted statute *expressly so providing,* be lawfully encumbered with a lien for a special or local assessment authorized to be imposed by the municipality for the abutting property's fair proportionate part of the cost of grading, paving and curbing a street upon which such school property abounds, but, that in view of the sacred constitutional trust character in which such school property is authorized and required to be held, kept and used by the school authorities, that it is not within the constitutional power of the Legislature to provide for the enforcement of any such special or local assessment lien by execution, levy or decretal sale on foreclosure to satisfy said lien, even though duly imposed, because to do so, would tend to destroy the constitutional trust upon which all school property is owned and held, and is required by the constitution to be employed.

But we further hold that the authority given under the constitution to a school district to purchase, own, hold and

use real property for school purposes, and to expend special tax school district funds thereon, is subject to legislative direction and control within the scope of the special constitutional school purposes, and that the legislature by a specific enactment so providing, may authorize and direct the expenditure of a part of the public school funds for the purpose of paying off and discharging lawfully imposed incumbrances upon school properties, imposed thereon by reason of special or local assessments for street improvements when not in excess of the benefits conferred thereon as determined pursuant to law, but that in the absence of any such special legislative authority and direction, that the trustees of a special tax school district have no right or authority to expend school funds for such purposes, except from the proceeds of the sale of the encumbered property itself if, in the course of events, the same should be abandoned for school purposes and disposed of, in which last mentioned event the purchase price received would be deemed to consist in part of the amount necessary to discharge the encumbrance on what is sold.

The result is that this appeal must be sustained, the order appealed from reversed, and the cause remanded to the court below with directions to grant the school trustees' motion to dismiss the bill. And such is the judgment of this court.

Reversed and remanded with directions to dismiss.

ELLIS and TERRELL, J. J., concur.

WHITFELD, P. J., and BROWN and BUFORD, J. J., concur in the opinion and judgment.

### UPON PETITION FOR REHEARING

PER CURIAM.—It is suggested by the petition for rehearing that in reversing the order appealed from with directions

to dismiss the bill of complaint, that this court overlooked the fact that said lien has not been adjudicated, and that the appellee City of Tampa is at least entitled to an adjudication of the lien, whether it is to be enforced at this time or not, by judicial decree.

In order that the question suggested may be properly presented by an amended bill, if appellee shall so elect to present it, it is ordered that our prior judgment of reversal with directions to sustain the motion to dismiss the original bill below, shall be so amended as to be without prejudice to appellee's right to seek an adjudication of the alleged lien pursuant to an amended bill filed in the present cause, or pursuant to a new original bill and that as so amended, our previous decision on this appeal shall be adhered to and the petition for rehearing denied.

Judgment of reversal amended and rehearing denied.

DAVS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.