72 So.2d 901 (1954)
CITY OF MIAMI
v.
BOARD OF PUBLIC INSTRUCTION OF DADE COUNTY.
Supreme Court of Florida. Division A.
May 28, 1954.
Rehearing Denied June 18, 1954.
*902 J.W. Watson, Jr., John H. Smith, Olavi M. Hendrickson, Miami, for appellant.
Boardman, Bolles & Kates and Von Arx & Von Arx, Miami, for appellee.
SEBRING, Justice.
The City of Miami has appealed from an order granting a motion to quash its alternative writ of mandamus and to dismiss the cause.
From the petition upon which the alternative writ was based it appears that the respondent, Board of Public Instruction of Dade County, Florida, is the owner of a lot of land in the City of Miami upon which the Miami Edison School is located. As a part of a public improvement program, the City of Miami in 1927 and succeeding years built sidewalks and installed sewer mains along the street upon which the school is located, and thereupon acquired special assessment liens against the school property for its proportionate cost of the benefits accruing as the result of the installations. In 1953 the City made demand on the Board of Public Instruction for payment of certain liens, all accruing prior to 1953, and upon payment being refused filed the petition in which it prayed that the court "issue its alternative writ of mandamus to order the Board * * * either (a) to pay the assessment liens * * * or (b) * * * to make proper provision *903 in its next fiscal budget to pay the assessment liens. * * *"
In support of its right to the relief prayed for the City relied, in part, on Chapter 28266, Laws of Florida 1953, F.S.A. § 235.34, which provides "That the County Boards of Public Instruction of the State of Florida * * * [are] hereby authorized, from the funds in their hands or control * * * to expend such portion thereof as may be necessary for the purpose of paying off and discharging lawfully imposed incumbrances upon school properties * * * which * * * have been lawfully imposed thereon for special or local assessments for street improvements, sidewalk improvements, sanitary improvements and like special benefits." (Emphasis supplied.)
The trial court rejected the contention of the City that Chapter 28266 required the payment by the Board of the amounts assessed for the improvements here involved, because it was of the opinion that although the 1953 law authorized the Board to pay the assessment liens which the City was attempting to collect, the Act did not contain a clear direction that the Board should do so and that in the absence of a specific directive to this effect the Board, at its discretion, could refuse payment. Based upon this view as to the effect of the applicable portions of the statute the trial court entered an order granting the motion to quash the alternative writ and to dismiss the proceeding, and this appeal followed.
We have the opinion that in construing Chapter 28266 the trial court placed an unwarranted emphasis on the distinction between the words "authority" and "direction." As we read the statute, it was undoubtedly enacted by the legislature to meet the views expressed by this Court in Blake v. City of Tampa, 115 Fla. 348, 156 So. 97, 100, wherein it was held, in respect to the payment of assessment liens against school property: "* * * it is not within the constitutional power of the Legislature to provide for the enforcement of any such special or local assessment lien by execution, levy, or decretal sale on foreclosure to satisfy said lien, even though duly imposed, because to do so would tend to destroy the constitutional trust upon which all school property is owned and held, and is required by the Constitution to be employed. * * * [however] the authority given under the Constitution to a school district to purchase, own, hold, and use real property for school purposes, and to expend special tax school district funds thereon, is subject to legislative direction and control within the scope of the special constitutional school purposes, and that the Legislature by a specific enactment so providing, may authorize and direct the expenditure of a part of the public school funds for the purpose of paying off and discharging lawfully imposed incumbrances upon school properties, imposed thereon by reason of special or local assessments * * * when not in excess of the benefits * * * thereon as determined pursuant to law * * *." (Emphasis supplied.)
Acknowledging the rule as stated, we have the view that, although in the body of Chapter 28266 there is no specific direction to the Board to discharge from school funds the assessment liens for public improvements abutting on school property, the recognition by the Legislature of the validity of the lien as a charge against the school fund constitutes a sufficient exercise of "legislative direction and control" in the premises, and that to allow the Board to use its own discretion as to whether or not it will satisfy the charge would amount, in effect, to a surrender by the Legislature of its legislative power over the subject matter and be an attempt unlawfully to delegate its power to others in violation of the principle that the execution of a statute "cannot be made to depend on the unbridled discretion of a * * * limited group of individuals." State ex rel. Taylor v. City of Tallahassee, 130 Fla. 418, 177 So. 719, 721. See also State ex rel. Maxwell Hunter, Inc. v. O'Quinn, 114 Fla. 222, 154 So. 166; State ex rel. Buford v. Spencer, 81 Fla. 211, 87 So. 634.
*904 However, the conclusion we have reached as to the validity of the reason assigned by the trial court for its dismissal of the proceedings does not put an end to the controversy before us. For it is well established "that on an appeal from an order of a trial court granting or denying relief in a particular cause, the appellate court will ordinarily look to that which has been done, rather than to the specific reasons assigned therefor, in determining whether reversible error has been committed." State ex rel. Bergin v. Dunne, Fla., 71 So.2d 746, 748, and cases cited; Sheridan v. Respess, 147 Fla. 626, 3 So.2d 704; In re Knight's Estate, 155 Fla. 869, 22 So.2d 249.
It is an elementary rule of construction that "a statute is not to be given a retrospective effect, unless its terms show clearly that such an effect was intended." In re Seven Barrels of Wine, 79 Fla. 1, 83 So. 627, 632. Accord Cragin v. Ocean & Lake Realty Co. (Palm Beach Realty Co.) 101 Fla. 1324, 133 So. 569, 135 So. 795; Laney v. Board of Public Instruction, 153 Fla. 728, 15 So.2d 748; State ex rel. Bayless v. Lee, 156 Fla. 494, 23 So.2d 575; Larson v. Independent Life & Accident Ins. Co., 158 Fla. 623, 29 So.2d 448. In McCarthy v. Havis, 23 Fla. 508, 2 So. 819, 821, which involved the effect to be given to a statutory change in the procedure for enforcing a mechanic's lien, it is pointed out that "the rule invoked above [against retrospective construction] has, moreover, been held to apply to purely remedial statutes." As the matter is stated in the authoritative text books on the subject, statutes will be construed retroactively only "if the legislative intent clearly indicates that retroactive operation is intended," such limitations being "founded on judicial premonition that retroactive laws are characterized by want of notice and lack of knowledge of past conditions and that such laws disturb feelings of security in past transactions." Sutherland on Statutory Construction, 3rd ed., sections 2212 and 2201.
While Chapter 28266, Laws of 1953, provides for expenditure of school funds for the purpose of discharging liens which have been lawfully imposed, there is nowhere in the Act the slightest indication as to whether or not it contemplates payment of pre-existing liens for special assessments imposed against school property throughout all past years. In the absence of any such legislative expression we are compelled to hold, under the governing rules of construction, that the legislature intended the terms of the statute to be prospective in operation and to pertain only to liens accruing against school properties after its effective date.
The conclusions we have reached makes it unnecessary to determine in this case the extent to which the Legislature in any event may lawfully direct the Board of Public Instruction to use county school funds, as distinguished from district school funds under the control of the board, to pay off and discharge special assessments against properties which under the law may be paid for and owned by the school districts. But see section 9, Article 12, Florida Constitution, F.S.A. State v. Board of Public Instruction for Levy County, 143 Fla. 212, 196 So. 452, at page 454: "The constitution does not contemplate that the county school funds * * * shall be so * * * disbursed as to unduly reduce the funds raised * * * for the current support and maintenance of public free schools." See also State v. Board of Public Instruction for Dade County, 126 Fla. 142, 170 So. 602, 606: "The consistent practice has been to use the county school fund for current maintenance purposes, the special tax school district fund raised by section 10 for maintenance, building, repair, library, and text-book purposes, and the funds raised by section 17 for interest and retirements on bonds for building, furnishing, or otherwise permanently improving school buildings and grounds. Such a practice was the inevitable result of directions incorporated in article 12 as originally adopted and as amended from time *905 to time to meet the demands of the public school system."
The judgment appealed from is affirmed.
ROBERTS, C.J., and TERRELL and MATHEWS, JJ., concur.