119 So.2d 323 (1960)
BOARD OF PUBLIC INSTRUCTION OF DADE COUNTY, Florida, a Body Corporate and Politic under the Laws of the State of Florida, Appellant,
v.
LITTLE RIVER VALLEY DRAINAGE DISTRICT; Central and Southern Florida Flood Control District; Atlantic Municipal Corporation, a Delaware Corporation; Morris Harkins; E.B. Leatherman, Clerk of the Circuit Court; John A. Gautier, Tax Assessor for Dade County, Florida, Appellees.
No. 59-224.
District Court of Appeal of Florida. Third District.
March 31, 1960.
*324 Boardman, Bolles & Davant, Miami, for appellant.
Charles H. Gautier, Egert & Levine, Darrey A. Davis, and Ward & Ward, Miami, for appellees.
CARROLL, CHAS., Judge.
Appellant Board of Public Instruction of Dade County, the plaintiff below, filed its complaint against the owners and holders of outstanding tax sale certificates issued for non-payment of certain drainage district special assessments for benefits, asking for a declaration of non-liability and that the certificates are null and void, and seeking injunction against the issuance of tax deeds. Issue was joined and the cause was tried before the chancellor who ruled that the assessments were binding on the school board, and that the holders of the tax certificates were entitled to tax deeds to the school board's properties encumbered thereby unless the Board should pay the amounts due thereunder plus interest and costs.
The use of the funds of the Board is strictly limited by the Constitution of Florida, F.S.A. Article 12, § 5, provides that "the principal of the State School Fund shall remain sacred and inviolate," and Article 12, § 9 provides that county school funds "shall be disbursed by the County Board of Public Instruction solely for the support and maintenance of public free schools." Section 13 of Article 12 prohibits "the appropriation of any part of the permanent or available school Fund to any other than school purposes."
In the leading case of Blake v. City of Tampa, 115 Fla. 348, 156 So. 97, 99, decided in 1934, the Supreme Court of Florida held that although assessment liens for benefits for improvements could be imposed as an incumbrance on property without consideration to the estate of the person in possession and irrespective of its ownership, "it is well settled that property in use for public or governmental purposes cannot be sold on execution or other legal process." And the court at that point in the Blake case also said, "This rule is applied to the sale of public property to pay local assessments for public improvements. And the rule has been applied in cases of an assessment against public property belonging to a county and to public property used for school purposes."
Commenting further on that proposition, the Supreme Court, in the Blake case (156 So. at page 100), said:
"Property of a school board, or of trustees of a special tax school district, is property held by the board or district trustees, for the use of the state, to carry on the state's constitutional system of public schools, established in accordance with the requirements of the Constitution, and as such trust property it is not subject to execution, levy, or decretal sale or foreclosure, to satisfy a lien for street improvements. * * *
* * * * * *
"We hold therefore as follows: That notwithstanding the provision of the several sections of article 12 of the Constitution of Florida relating to schools and the public school funds, the property acquired and used for public school purposes, owned within the jurisdiction of a municipality by a special tax school district under the Constitution and laws of Florida, may, by a duly enacted statute expressly so providing, be lawfully incumbered with a lien for a special or local assessment authorized to be imposed by the municipality for the abutting property's fair proportionate part of the cost of grading, paving, and curbing a street upon which such school property abounds, but that, in view of the sacred constitutional trust character in which such school property is authorized and required to be held, kept, and used by the school authorities, it is not within the constitutional *325 power of the Legislature to provide for the enforcement of any such special or local assessment lien by execution, levy, or decretal sale on foreclosure to satisfy said lien, even though duly imposed, because to do so would tend to destroy the constitutional trust upon which all school property is owned and held, and is required by the Constitution to be employed.
"But we further hold that the authority given under the Constitution to a school district to purchase, own, hold, and use real property for school purposes, and to expend special tax school district funds thereon, is subject to legislative direction and control within the scope of the special constitutional school purposes, and that the Legislature by a specific enactment so providing, may authorize and direct the expenditure of a part of the public school funds for the purpose of paying off and discharging lawfully imposed incumbrances upon school properties, imposed thereon by reason of special or local assessments for street improvements when not in excess of the benefits conferred thereon as determined pursuant to law, but that, in the absence of any such special legislative authority and direction, the trustees of a special tax school district have no right or authority to expend school funds for such purposes, except from the proceeds of the sale of the incumbered property itself if, in the course of events, the same should be abandoned for school purposes and disposed of, in which lastmentioned event the purchase price received would be deemed to consist in part of the amount necessary to discharge the incumbrance on what is sold."
The effect of the decision in the Blake case, as it relates to the assessments involved here, is that while the drainage assessments may be imposed as an incumbrance upon the property of the County Board of Public Instruction, the lien of those assessments is not capable of enforcement against such school property by execution, foreclosure, or by its divestment through tax sale or issuance of tax deed; but that notwithstanding the constitutional restrictions relating to use of public school funds the legislature can permit and require such school funds to be expended for the purpose of paying off and discharging duly imposed assessments for improvements to such school property, when and only when the legislature so authorizes by a specific enactment. See, also, Southern Drainage Dist. v. State, 93 Fla. 599, 113 So. 561; City of Miami v. Board of Public Instruction, Fla. 1954, 72 So.2d 901; Board of Public Instruction v. City of Jacksonville, Fla. 1956, 86 So.2d 887.
A statute passed in 1953,[1] after the period involved here, authorized the Board *326 to pay assessments for improvements consisting of "street improvements, sidewalk improvements, sanitary improvements and like special benefits." We are not called upon here to determine whether the assessments referred to in that statute should be construed to include drainage assesments, as that act had no retroactive effect. City of Miami v. Board of Public Instruction, supra.
Appellee has contended that legislative authorization for the instant special assessment can be found in the language of § 298.36, Fla. Stat., F.S.A., which allows an assessment or tax for drainage benefits upon "all lands in the district to which benefits have been assessed." That general authority to levy taxes on lands to which benefits have been assessed as provided for in § 298.36 was made without any reference to property of the Board of Public Instruction; and as shown by Blake v. City of Tampa, supra, and City of Miami v. Board of Public Instruction, supra, before the Board may expend the school funds for such drainage assessments it would be necessary that an act be passed clearly expressing the legislative intent to authorize such use of the funds of the Board of Public Instruction, in view of the constitutional restrictions on their use. This becomes more apparent when it is observed that the legislature found it necessary to pass the detailed and specific statute in 1953 (§ 235.34, Fla. Stat., F.S.A.) as a means of rendering assessments for improvements against property of the Board of Public Instruction valid and payable.
The later case of State ex rel. Board of Sup'rs of South Florida Conservancy Dist. v. Warren, Fla. 1951, 57 So.2d 337, which was cited and relied on by the chancellor, did not change the law in this connection as pronounced in the Blake case. The apparent conflict of that case with the Blake case is explained by showing that the property involved, though it had been conveyed to the State Board of Education, was held not to be a part of the State School Fund as provided by Section 4, Article 12 of the Constitution, because it had been appropriated by the Trustees of the Internal Improvement Fund and set apart for use as an Agricultural Experiment Station, and because as to such lands there was a statute which the court construed to be effective to require the Trustees of the Internal Improvement Fund to pay the drainage assessments thereon. Thus the Warren case appears consistent with the earlier Blake decision, rather than in conflict with it. Furthermore, the law as announced in the Blake case was adhered to later, expressly in City of Miami v. Board of Public Instruction, supra, Fla. 1954, 72 So.2d 901, and impliedly in Board of Public Instruction v. City of Jacksonville, supra, Fla. 1956, 86 So.2d 887.
The chancellor relied on the Warren case, supra, and Baldwin Drainage Dist. v. MacClenny Turpentine Co., 154 Fla. 525, 18 So.2d 792, also for the proposition that a property owner's failure to object to the organization of the drainage district, and the assessment of benefits, etc., against its property for 20 years or more established a waiver or estoppel by acquiescence and constituted laches.
In the Warren case no obligation of the Board of Education for payment of the assessment was involved. The Trustees took over the property, and it was the Trustees who were held to be authorized and required by statute to pay the taxes and assessments thereon. In the Baldwin case there was no legal restriction against the owners paying the assessed amounts. In the instant case, in the absence of the necessary enabling legislation, the Board of Public Instruction was not obligated or permitted to use its funds for that purpose, and we have been shown no legislative authority *327 or direction to the County Board of Public Instruction, applicable at the times involved, to use its funds to pay such drainage assessments. Under those circumstances, where non-liability existed from the outset, delay by the Board in announcing such non-liability would not ripen into laches or otherwise prevent its suit. Delay can not be used as a basis for forcing payment of assessments which the Board at all times involved was without authority or power to pay.
We are impelled, therefore, to conclude that the learned chancellor was in error in holding that the tax certificates in question were enforceable and that the tax deeds as applied for were entitled to be issued. Plaintiff was entitled to protection against the liens of the taxes or assessments in question, and from the threatened issuance of tax deeds applied for thereon.
Since the liens are not enforceable against the property to which they relate, one may well question their substance or validity. As claims which may not be enforced, they appear to represent a right without a remedy, which is said to be "a ghost in the law and difficult to grasp." But as suggested in the opinion on rehearing in Blake v. City of Tampa, supra, 156 So. at page 101, such liens for assessments may be quick for some prospective purpose though lacking present vitality.
Reversed.
HORTON, C.J., and PEARSON, J., concur.
NOTES
[1] Section 235.34, Fla. Stat., F.S.A.

"(1) It is hereby declared that the placing of sidewalks, the making of street improvements, sidewalk improvements, sanitary improvements and like special benefits are proper and necessary parts of school plants when such improvements are furnished to or in connection with such plants and that they are proper and necessary facilities for other state boards or agencies whenever they are lawfully constructed so as to bring such benefits within the provisions of laws governing special benefits in this state; that in the case of school plants and facilities such improvements are necessary for the safety and health of the students and others using such school plants and facilities.
"(2) The county boards of public instruction of the state and other boards and agencies of the state which have the handling and disposition of public moneys derived through the collection of taxes, be, and each of them is hereby authorized, from the funds in their hands or control, and coming into their hands and control, to expend such portion thereof as may be necessary for the purpose of paying off and discharging lawfully imposed encumbrances upon school properties, or properties of other state agencies or boards, which encumbrances have been lawfully imposed thereon for special or local assessments for street improvements, sidewalk improvements, sanitary improvements and like special benefits." Laws 1953, c. 28266, §§ 1, 2, as amended Laws 1955, c. 29615, § 33.