Mr. Tom Gardner, Executive Director Department of Natural Resources 3900 Commonwealth Boulevard Tallahassee, Florida 32399-3000
Mr. Ben G. Watts, Secretary Department of Transportation 605 Suwannee Street MS50 Tallahassee, Florida 32399-0450
Mr. Robert L. Hamilton, City Attorney City of Orlando 400 South Orange Avenue Orlando, Florida 32801
Dear Sirs:
You ask substantially the following questions:
1. Are stormwater utility fees imposed by the City of Orlando pursuant to s. 403.0893, F.S., special assessments for purposes of s. 197.363, F.S.? 2. Are stormwater utility fees imposed by the City of Orlando pursuant to s. 403.0893, F.S., service charges for purposes of s. 197.363, F.S.? 3. Are stormwater utility fees imposed by the City of Orlando pursuant to s. 403.0893, F.S., non-ad valorem assessments as defined in s. 197.3632, F.S.? 4. Is the real property of the State of Florida immune or exempt from the imposition of stormwater utility fees by the City of Orlando pursuant to s. 403.0893, F.S.? 5. If stormwater utility fees imposed by the City of Orlando are deemed to be service charges rather than taxes or special assessments, is the state liable for the payment of such charges in the absence of a written contract between the state and the entity seeking to impose the charge? 6. May the non-ad valorem levy, collection, and enforcement method provided for in Ch. 197, F.S., be used when a county or municipality elects to create a stormwater utility under s.403.0893(1), F.S., as opposed to stormwater management benefit areas under s. 403.0893(3), F.S.? 7. If the state is liable for the payment of stormwater utility fees imposed by the City of Orlando, is the real property of the state subject to forced sale under the procedures set forth in Ch. 197, F.S.?
In sum, I am of the opinion that:
1. and 2. The stormwater utility fees imposed by the City of Orlando pursuant to s. 403.0893(1), F.S., appear to be special assessments rather than user charges. 3. As it appears that the fees imposed by the City of Orlando are special assessments as opposed to user fees, such fees would appear to qualify as non-ad valorem assessments. 4. As it appears that the stormwater utility fees imposed by the City of Orlando are special assessments, the real property of the state is not subject to such fees absent a specific statute imposing such liability upon the state. 5. In light of the conclusion reached in Question Four, it is unnecessary to address your fifth question. 6. In light of the language of s. 403.0893(3), F.S., authorizing the use of the non-ad valorem levy, collection, and enforcement method provided for in Ch. 197, F.S., for fees assessed pursuant to that section, such method may be used when a county or municipality elects to create a stormwater utility under s. 403.0893(1), F.S. 7. In light of the conclusion reached in Question Four, it is unnecessary to address this question.
Section 403.0893, F.S., provides a funding mechanism for local governments to construct, operate or maintain stormwater systems. Pursuant to the statute, a county or municipality may:
(1) Create one or more stormwater utilities and adopt stormwater utility fees sufficient to plan, construct, operate, and maintain stormwater management systems set out in the local program required pursuant to s. 403.0891(3);
* * *
(3) Create, alone or in cooperation with counties, municipalities, and special districts pursuant to the Interlocal Cooperation Act, s. 163.01, one or more stormwater management system benefit areas. All property owners within said area may be assessed a per acreage fee to fund the planning, construction, operation, maintenance, and administration of a public stormwater management system for the benefited area. . . . The fees shall be calculated to generate sufficient funds to plan, construct, operate, and maintain stormwater management systems called for in the local program required pursuant to s. 403.0891(3). For fees assessed pursuant to this section, counties or municipalities may use the non-ad valorem levy, collection, and enforcement method as provided for in chapter 197.
Questions One and Two
As your first and second questions are interrelated, they will be answered together. You ask whether the stormwater utility fees imposed by the City of Orlando pursuant to s. 403.0893, F.S., are special assessments or service charges for purposes of s. 197.363, F.S., which establishes an optional method of collection for special assessments.
Section 197.363, F.S., recognizes a distinction between special assessments and service charges. Under the statute, special assessments authorized by general or special law or the State Constitution may be collected as provided for ad valorem taxes under Ch. 197, F.S., if certain conditions are met.[1] Pursuant to subsection (5) of the statute, however, tax certificates and tax deeds may not be issued for nonpayment of service charges and such charges may not be included on the bill for ad valorem taxes.
There has been considerable confusion in recent years regarding the terms tax, special assessment, and service or user charge. Generally, a tax has been defined as a forced burden or charge assessed by some reasonable rule of apportionment on persons or property.[2] Special assessments are not taxes but are "charges publicly assessed against the property of some particular locality because that property derives some special benefit from the expenditure of the money collected by the assessment in addition to the general benefit accruing to all property or citizens."[3]
Unlike a tax, special assessments place a special charge on the land based upon the justification that the land derives a special benefit in addition to the general benefit to the public.[4]
The courts of this state have recognized that the imposition of special assessments is not restricted to the construction of a public improvement but may also be imposed for the furnishing of certain services.[5] However, as there is a distinction between taxes and special assessments, there would also appear to be a distinction between special assessments and service charges (or user fees).
A special assessment is an enforced contribution from the property owner imposed on the theory that the property assessed derives some special or peculiar benefit in the enhancement of value as a result of the improvement or service that is made with the proceeds. A user fee or service charge is a fee imposed for the use of the facility or service.
In Contractors and Builders Association of Pinellas County v. City of Dunedin,[6] The Supreme Court of Florida considered the nature of an impact fee and likened such fees to user or service fees, which the municipality was authorized to impose pursuant to statute and its home rule powers. The Court recognized a distinction between such fees and special assessments, stating:
The fees in controversy here are not special assessments. They are charges for use of water and sewer facilities; the property owner who does not use the facilities does not pay the fee. Under no circumstances would the fee constitute a lien on realty.[7]
Since the courts have concluded that special assessments are not limited to only the construction of public improvements but may include the provision of services, the distinctions between special assessments and user or service charges have become blurred. However, the statutes themselves appear to recognize a distinction between the terms.[8] Accordingly, while the terms have, on occasion, been used interchangeably,[9] I am of the opinion that they are not synonymous. Subsection (3) of s.403.0893, F.S., appears to contemplate the imposition of special assessments within a stormwater management system benefit area. However, the language in subsection (1), which authorizes the imposition of stormwater utility fees, does not as clearly specify the nature of the fees imposed therein.
While it may be argued that the language in s. 403.0893(1), F.S., authorizes the imposition of a service charge,[10] your inquiry is based upon the fees imposed by the City of Orlando and concerns the liability of the state for such fees.[11] A review of the materials submitted by the City of Orlando indicates that the City of Orlando is imposing the stormwater utility fee as a special assessment.
From the information supplied to this office, the fees are imposed on property within the city regardless of use, apparently on the basis that the particular property has received some particular benefit from the system.[12] In discussing the authority of the city to impose the fee, the city has referred this office to the opinions of the courts and this office upholding the validity of special assessments and states that the city may legally assess property within the city so long as there is substantial evidence as to the benefits that may accrue to the various property owners.[13] As discussed, supra, this office is of the opinion that a distinction exists between user charges and special assessments. The former is based upon use while the latter contemplates a particular benefit to the property.[14]
In addition, this office has been advised that the city has utilized the provisions of s. 197.363, F.S. As noted above, s.197.363, F.S., specifically prohibits the use of ad valorem tax bills for service charges. I find no basis for concluding, as suggested by the city, that a user charge for purposes of s.403.0893(1), F.S., is not a user charge for purposes of s.197.363, F.S.
Based upon the foregoing, I am of the opinion that the stormwater utility fees imposed by the City of Orlando pursuant to s.403.0893(1), F.S., are being imposed as special assessments.
Question Three
Section 197.3632(1)(d), F.S., defines "Non-ad valorem assessment" to mean "only those assessments which are not based upon millage and which can become a lien against a homestead as permitted in s. 4, Art. X of the State Constitution." This office has previously stated that service or user charges do not qualify as non-ad valorem assessments as defined in s. 197.3632, F.S., since such charges cannot become a lien against homestead as permitted in s. 4, Art. X, State Const.[15]
However, as discussed in Questions One and Two, the utility charge imposed by the city pursuant to s. 403.0893(1), F.S., as a charge against particular property with reference to the peculiar and specific benefit to the property by reason of the improvements, would appear to be imposed as special assessments. Thus, such charges, if properly imposed as such, would appear to constitute an assessment which is not based upon millage which can become a lien against a homestead.[16] Such charges, therefore, would qualify as "non-ad valorem assessments" as defined in s.197.3632(1)(d), F.S.
Question Four
It is generally recognized that state-owned lands are subject to special assessments if so provided by legislation.[17] The legislative intent to impose such liability, however, must be clear.[18]
Section 403.0893(1), F.S., merely authorizes the city to impose stormwater utility fees; it does not expressly or by necessary implication impose such liability on state lands. Thus, to the extent that the City of Orlando seeks to levy a stormwater utility fee as a special assessment pursuant to s. 403.0893(1), F.S., and in the absence of a clear declaration by the Legislature, I cannot conclude that state lands are subject to the fee imposed by the city.
To the extent that a county or municipality seeks to impose such fees as service charges, the state may be liable for such charges. While state property used for public purposes is not generally subject to taxes or assessments, it may be liable for charges for the services it uses.[19]
Question Five
In light of the conclusion reached in the previous questions that the fees imposed by the City of Orlando are being imposed as special assessments rather than service charges, it is unnecessary to respond to your fifth question.
I would note, however, that it has been generally recognized that the state may be liable for user or service charges for the services it uses. Thus, to the extent that stormwater fees are imposed as service or user fees for services actually received, the state may be liable for such fees. I am not aware, however, of any decision by the courts of this state which has directly considered the authority of a municipality to compel the state to use its services in the absence of a statutory provision or contractual agreement to that effect. Accordingly, it may be advisable to seek legislative or judicial clarification on this issue.
Question Six
You ask whether the non-ad valorem levy, collection and enforcement methods provided in Ch. 197, F.S., may be used when a county or municipality elects to create a stormwater utility under s. 403.0893(1), F.S., rather than a stormwater management benefit unit under subsection (3) of the statute. Section 403.0893(3), F.S., authorizes the creation of a stormwater benefit area and provides assessment of fees to fund the construction, operation and maintenance of the stormwater management system. In expressly authorizing the use of the levy, collection and enforcement method provided for in Ch. 197, subsection (3) provides:
For fees assessed pursuant to this section, counties or municipalities may use the nonad valorem levy, collection, and enforcement method as provided for in chapter 197. (e.s.)
The statute refers to fees assessed pursuant to the section, not merely subsection (3) of the section. It can be argued that due to its placement in subsection (3), the last sentence of the sub-section refers to those fees imposed pursuant to that subsection. However, in the absence of legislative or judicial clarification, this office must give effect to the plain language of the statute which refers to fees assessed pursuant to the section rather than subsection.
Accordingly, I am of the opinion, until legislatively or judicially clarified, that a county or municipality electing to create a stormwater utility under subsection (1) of the statute may use the levy, collection and enforcement methods provided for in Ch. 197, F.S., as well as for those fees assessed pursuant to subsection (3) of s. 403.0893, F.S.
However, as discussed in Question Three, it is the opinion of this office that service charges are not assessments which may be enforced against homestead property. Accordingly, to the extent that the stormwater utility fees imposed by a county or municipality pursuant to subsection (1) are service charges, the procedures in Ch. 197, F.S., relating to the collection and enforcement of liens against homestead property would appear to be inapplicable.
Question Seven
In light of the conclusion reached in Question Four, it is unnecessary to address your seventh question. Generally, however, I would note that the courts of this state have held that in the absence of statute, execution may not be levied against public property.[20] Accordingly, it would appear to be questionable whether the property of the state would be subject to forced sale pursuant to Ch. 197, F.S., should the state be responsible for payment of the stormwater utility fees.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Section 197.363(2), F.S.
[2] See generally, 50 Fla.Jur.2d Taxation 1:2.
[3] 48 Fla.Jur.2d Special Assessments s. 1.
[4] Id.
[5] See, e.g., Charlotte County v. Fiske, 350 So.2d 578 (2 D.C.A. Fla., 1977). And see, s. 125.01(1)(q), F.S., authorizing a county to establish municipal service taxing districts for any part or all of the county within which may be provided certain services from funds derived from service charges, special assessments, or taxes within such units.
[6] 329 So.2d 314 (Fla. 1976).
[7] 329 So.2d at 319. And see, AGO 89-85 in which this office concluded that the flat fee imposed for voluntary garbage collection by the county was a service charge and not a special assessment.
[8] See, s. 197.363, F.S. And see, s. 125.01(1)(q), F.S., authorizing the creation of municipal service benefit units with the authority to impose service charges, special assessments, or taxes within that unit only.
[9] See, Charlotte County v. Fiske, supra at 580, in which the district court stated that the term "special assessment" is "a broad one and may embrace various methods and terms of charges collectible to finance usual and recognized municipal improvements and services. Among such charges are what are sometimes called `fees' or `service charges,' when assessed for special services." The case recognizes that the imposition of special assessments is not limited to the construction of a public improvement but may be imposed for services.
[10] See, s. 403.031(16), F.S., which defines "Stormwater utility" to mean "the funding of a stormwater management program by assessing the cost of the program to the beneficiaries based on their relative contribution to its need. It is operated as a typical utility which bills services regularly, similar to water and wastewater services." And see, 11 McQuillan s. 31.30a stating that sewer and drainage charges are generally not considered to be taxes or special assessments but are in the nature of tolls or rents paid for services furnished or available. Cf., Bexar County v. City of San Antonio, 352 S.W.2d 905 (Civ.Ct. App. 1961) (city sewer charges not taxes or assessments but were reasonable charges against the county even though cost of making replacements and extending and improving system as well as cost of operating and maintaining present system considered in determining charges).
[11] This office must presume the validity of the municipal ordinance. See, State v. City of Miami Beach, 234 So.2d 103 (Fla. 1970); White v. Crandon, 156 So. 303 (Fla. 1934) (statutes presumptively valid and must be given effect until judicially declared unconstitutional or invalid).
[12] The city ordinance does contain a provision which allows the charge to be reduced or prorated as determined by the Utility Bureau Chief for those properties having existing stormwater management facilities or planning such facilities. See, s. 31.13 of the city code. The code does not, however, appear to exempt such properties from all charges.
[13] See, memorandum from Mr. Sam A. Mackie, Assistant City Attorney, dated February 23, 1990.
[14] See, AGO 90-39 stating that the determination that the property derives some special ascertainable benefit, above and beyond the general benefit received by all property or the public as a result of the service or capital facility funded by the assessment, is one which must be made by governing body of the county or municipality and, once made, must be presumed by this office to be valid.
[15] See, AGO 89-85. Cf., AGO 85-26 concluding that a lien created by s. 162.09, F.S., for administrative fines ordered by a code enforcement board was not enforceable against homestead property since the lien was not for the payment of taxes or assessments.
[16] The City of Orlando, in stating that the stormwater utility fees imposed by the city are non-ad valorem assessments, refers to AGO 85-26, specifically that portion of the opinion which states:
A special or local assessment for public improvements is a charge against particular property with reference to the peculiar and specific benefit to such property by reason of the improvements. . . .
The language, describing the special benefit received by a particular property, refers to a special assessment, not a service charge. In fact, in that opinion, this office concluded that only liens for the payment of taxes and special assessments could be enforced against a homestead. Thus, the lien created by statute for the fines imposed by a code enforcement board was not enforceable against homestead property.
[17] See, Martin v. Dade Muck Land Co., 116 So. 449 (Fla. 1928), appeal dismissed, 278 U.S. 560 (1928); 48 Fla.Jur.2d Special Assessments s. 31; AGO 84-57.
[18] See, Edwards v. City of Ocala, 50 So. 421 (Fla. 1909); Blake v. City of Tampa, 156 So. 97 (Fla. 1934) (public property will not be deemed to be subject to special assessments unless by special enactment or necessary implication).
[19] See, AGO 77-94 (contractual franchise charge imposed upon a public utility by a municipality and separately stated on bill rendered to utility customers is not a tax but constitutes a part of the utility's operating costs and rate base and, thus, a community college is not exempt or immune from payment of its proportionate share of such fee or operating cost as a part of the total charges for utility services rendered to and received by the community college); AGO 70-56 (state agencies required to pay franchise fee imposed by municipality on telephone company which, pursuant to Public Service Commission regulations, passed such fee onto its consumers as an increase in telephone service charges). Cf., Bexar County v. City of San Antonio, supra; Opinion of Justices, 39 A.2d 765 (N.H. 1944) (rule that sewer rents imposed by city are charges for service rendered is not restricted to private consumers but extends to the state where officials who accept the service have power to act in this matter).
[20] See, 24 Fla.Jur.2d Executions s. 28; Blake v. City of Tampa, supra at 99-100 ("it is well settled that property in use for public or governmental purposes cannot be sold on execution or other legal process"). And see, City of Coral Cables v. Board of Public Instruction of Dade County, 313 So.2d 92 (3 D.C.A. Fla., 1975), stating that the city was constitutionally prohibited from satisfying assessment liens by foreclosure against school property. The court held, however, that a statutory provision authorizing the school board in its discretion to pay for improvements when it had not given its prior approval or consent, did not grant the school board the right to exercise unbriddled discretion to withhold payment for special improvements to school property but entitled the city to recover from the school board although it could not foreclose against school property.